## Sanfilippo v. Children's Hospital

*Charles E. Boyle*, and *Francis J. Carey*, for plaintiffs.
*John C. Conti*, for defendant.
*Stewart M. Flam*, for defendant.
*Linton L. Moyer*, for defendant.
*James F. Israel*, for defendant.

FINKELHOR, *J.*, July 22, 1982—The above captioned wrongful death and survival action, based upon medical malpractice and brought by Thomas F. Sanfilippo and Ingrid L. Sanfilippo and Thomas F. Sanfilippo, Administrator of the Estate of Anthony Paul Sanfilippo, comes before the court on the preliminary objections of all defendants in the

nature of a demurrer to Count VIII of the complaint, alleging the emotional distress of the parents of the deceased child.

The crux of the preliminary objections is whether Count VIII set forth a valid cause of action for the negligent infliction of emotional distress under Sinn v. Burd, 486 Pa. 146, 404 A. 2d 672 (1979); Section 436 of the Restatement (Second) of Torts.

It is well settled that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded facts and all inferences fairly deducible therefrom: Yania v. Bigan, 397 Pa. 316, 155 A. 2d 343 (1959). The complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to recovery under Pennsylvania law.

The relevant portions of the pleadings, contained in Count VIII and specifically paragraphs 54 and 55, state as follows:

"54. That solely due to the negligence, carelessness and recklessness of the Defendants, the Plaintiffs were caused to suffer severe emotional and psychological injury and damage when they sought to feed the minor, Plaintiff's decedent, a six week old infant early in the morning of May 9, 1979, and discovered the cold body of this deceased infant.

"55. That the Plaintiffs suffered severe emotional and psychological shock and injury from the aforesaid incident solely due to the negligence, carelessness and recklessness of the Defendants as herein above set forth, said negligence being incorporated by reference herein with full force and effect as if set forth at length."

## FACTS

The facts of this unfortunate matter are brief.

Plaintiffs Thomas F. Sanfilippo and Ingrid L. Sanfilippo were the parents of the minor decedent Anthony Paul Sanfilippo and Thomas is Administrator of the Estate of the deceased minor. Defendants include the Children's Hospital of Pittsburgh and the physicians, nurses and social workers employed by and on the staff of said Hospital. Defendant Gursky is a licensed physician in private practice.

Anthony Sanfilippo was admitted to the Children's Hospital of Pittsburgh on May 3, 1979, for serious head injuries resulting from a fall earlier in the day. On May 5, 1979, the infant was released and taken home by plaintiff's parents. In the early morning of May 9, 1979, plaintiff-mother who was nursing the child, found the dead body of her son when she went to feed him. Both parents claim damages resulting from the emotional shock of the discovery of the dead infant.

In other counts of the complaint, plaintiffs allege both omissions to act by failure to properly diagnose and overt acts of negligence, including the improper discharge of the child from the hospital while he suffered from severe life-threatening head injuries and the failure to warn the parents of the critical condition of the child.

It is the position of defendants that Sinn v. Burd, supra, requires that plaintiffs contemporaneously observe or witness the accident, event or negligence to one's "relative" in order to state a cause of action for negligent infliction of emotional distress and that the observation of the death of the child is not sufficient to substitute for the observation of the negligent act.

It is plaintiffs' position that, under the doctrine of "foreseeability" adopted in Sinn v. Burd, supra, the observation of the act of negligence is not required.

Plaintiffs contend that the child's death and the parents' shock upon viewing the corpse were both foreseeable by defendants and come within the parameters of Sinn v. Burd, supra. According to plaintiffs, the observation of the act of negligence is no longer a limiting factor for the recovery of damages due to emotional distress.

In order to resolve this issue, it is necessary to consider briefly the history of the tort of emotional distress in Pennsylvania.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Historically, courts have been reluctant to allow recovery for the negligent infliction of emotional distress as an independent tort action. Their reluctance, as with many "novel" causes of action, was based on a fear that "the courts would be swamped by a virtual avalanche of cases," Knaub v. Gotwalt, 422 Pa. 267, 271, 220 A. 2d 646 (1966). Inherent in this reluctance was also a concern with fraudulent and spurious claims arising from the difficulty of proof and the actual ascertainment of injury was viewed as highly speculative. However, this barrier to recovery was overcome in cases where an obvious casual link could be shown between a physical injury sustained by the plaintiff and the ensuing emotional distress.

The "impact rule," for decades the precedent in Pennsylvania, allowed recovery for negligently inflicted emotional distress, when accompanied by actual physical injury as a result of the impact to the complainant: Bosley v. Andrews, 393 Pa. 161, 142 A. 2d 263 (1958); Potere v. Philadelphia, 380 Pa. 581, 112 A. 2d 100 (1955); Huston v. Freemansburg Borough, 212 Pa. 548, 61 A. 1022 (1905);

Ewing v. Pittsburgh Railway Co., 147 Pa. 40, 23 A. 340 (1892).

The arbitrary and frequently unjust results of applying the "impact rule" were acknowledged in many jurisdictions by the adoption of the "zone of danger" test. This doctrine permitted recovery for emotional distress and the resulting physical consequences if the complainant was in the immediate zone of danger caused by another's negligence. The requirement of actual physical impact was abolished when the fear of possible injury could be established: Robb v. Pennsylvania R.R., 58 Del. 454, 210 A. 2d 709 (1965); Falzone v. Busch, 45 N.J. 559, 214 A. 2d 12 (1965): Niederman v. Brodsky, 436 Pa. 401, 261 A. 2d 84 (1970).

In 1979, the Pennsylvania Supreme Court in Sinn v. Burd, 486 Pa. 146, 404 A. 2d 672 (1979), modified the zone of danger test and based upon the "foreseeability" standard developed by California in Dillon v. Legg, 68 Cal. 2d 728, 441 P. 2d 912 (1968), allowed bystander recovery.

In Sinn, a mother witnessed an automobile strike and kill her minor child while she herself was outside of the zone of danger created by the driver's negligence. The court held that a cause of action for which relief could be granted, did exist because emotional distress on the part of the mother was a reasonably foreseeable injury.

Justice Nix stated as follows:

"The restrictiveness of the zone of danger test is glaringly apparent where it is allowed to deny recovery to a parent who has suffered emotional harm from witnessing a tortious assault upon the person of his or her minor child. . . . the emotional impact upon a parent witnessing the killing of a minor child is at least as great and as legitimate as the apprehension that is inspired by a plaintiff

being personally within the zone of danger." 486 Pa. at 170.

"Where the bystander is a mother who witnessed the violent death of her small child and the emotional shock emanated directly from personal observation of the event, we hold as a matter of law that mental distress and its effects is a foreseeable injury." 486 Pa. at 173.

In so holding, the court in Sinn dismissed much of the former opposition to claims of negligent infliction of emotional distress.

To determine the scope of the Sinn decision, it is necessary to examine Dillon and its progeny in California.

In application, Dillon permitted recovery when a defendant should have foreseen that his or her conduct would cause emotional distress resulting in physical injuries to a person of average sensitivities. Therefore, the witness to the accident need not have run the same risk of physical injury as the accident's primary victim. However, a subsequent physical manifestation of the emotional shock was still a prerequisite to recovery: Id. at 740, Krouse v. Graham, 19 Cal. 3d 59, 562 P. 2d 1022, 137 Cal. Rptr. 863 (1977).

Dillon, while advocating a case by case adjudication of defendant's legal obligation, defined three factors for use in determining foreseeability:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim

were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship: Dillon, supra at 740-41.

In the instant case, plaintiffs contend that the actual accident was the infant's death and the mother's subsequent discovery of her deceased child and not the misdiagnosis at the hospital. This reasoning would place the mother in close proximity to the child and would additionally qualify as meeting the requirement of sensory and contemporaneous observance. Yet, this is not the construction California courts have attached to the act of death.

In Jansen v. Children's Hospital Medical Ctr. of East Bay, 31 Cal.App. 3d 22, _____ P. 2d _____, 106 Cal. Rptr. 883 (1973), a post-Dillon decision, plaintiff mother sought to recover damages for emotional trauma as a result of viewing her minor daughter's death. In that case, the alleged negligence included misdiagnosis and medical malpractice. The court found that recovery could only be allowed if the event causing injury to the child was one capable of being the subject of sensory perception. The essential element in meeting the Dillon test was defined as being the *visibility of the tortious act itself* rather than the visibility of the resulting death. In discussing the type of negligence involved in a factual situation of this kind, the California court elaborated:

"Failure of diagnosis, of course, is not an event which can itself be perceived by the layman. In fact, it occurs only when the expert, however negligently, fails of perception. We by no means minimize the often agonizing affects upon a survivor of the slow decline and death of a loved one. But to extend the rule of Dillon to the entire area of injury

to a parent by improper diagnosis of a child's ailment . . . is an extreme broadening of the rule which the Supreme Court apparently sought to limit . . .

"In embarking upon this new area of tort law, Dillon itself counsels moderation. To extend the broadening process to the whole field of medical malpractice in diagnosis appears to us an unwarranted and impractical expansion." 106 Cal.Rptr. at 885.

In the recent case of Amader v. Johns-Manville Corp. et al., 514 F. Supp. 1031 (1981), a federal district court decision applying Sinn v. Burd, supra, the nature of an event constituting an accident was described as follows:

"The court repeatedly described the 'event' or 'accident' as 'sudden and violent.' See Sinn v. Burd, 486 Pa. at 167, 173, 404 A. 2d 672. This very aspect of the 'event' or 'accident' epitomizes the trauma and emotional impact for which a plaintiff recovers. See Sinn v. Burd, 486 Pa. at 157, 158, 170 n. 18, 171, 173, 404 A. 2d 672." 514 F. Supp. at

In discussing the "impact rule," the "zone of danger" doctrine, and the forseeability test, Justice Nix, the author of Sinn v. Burd, distinguishes recovery for shock from recovery for grief as follows:

"The common theme between the three theories is that in each instance the negligence of the actor results in a *sensory experience* that causes the resulting mental distress. In this instance if relief were to be granted it is clear that we would be erasing the longstanding tradition of denial of recovery for grief. The effects of the negligence . . . went no further than to create the situation that occasioned the grief." Yandrich v. Radic, No. 80-

2-323, Opinion filed July 10, 1981. Slip Opinion J-242-5 (Emphasis added.)

## IMPACT OF THE MOLIEN DECISION

The California case of Molien v. Kaiser Foundation Hospitals, 27 Cal. 3d, 167 Cal. Rptr. 831, 616 P. 2d 813 (1980), represents the most recent development in the tort of the negligent infliction of emotional distress.

In Molien, a woman was incorrectly diagnosed as having syphilis and told to inform her husband in order that he undergo tests. Ultimately, the diagnosis was found to be erroneous but the emotional turmoil that it caused led to the dissolution of the marriage. The husband sued for negligent infliction of emotional distress. The court permitted recovery although the Dillon requirements of personal observation of the tortious act and a physical manifestation of the emotional distress were not met. The California court described Dillon as "apposite, but not controlling." Molien, 27 Cal. 3d at 921. The fact situation in Molien is substantially different from that found in "Dillon" cases. The husband was not claiming to be an injured bystander but rather a direct victim of the negligent misdiagnosis. The court applied a general principle of foreseeability in reaching the conclusion that the direct harm suffered was a foreseeable consequence of the misdiagnosis of the wife.

However, Molien has not been extended beyond its own facts. In Cortez v. Macias, 110 Cal.App. 3d 649, 167 Cal.Rptr. 905, _____ P. 2d _____, (1980), a mother was denied recovery for emotional distress suffered when informed of the death of her infant. The court reiterated the Dillon rule and distinguished Molien by noting that "the tortious con-

duct of defendant . . . [in Molien] was directed at plaintiff as well as his wife." Cortez, 167 Cal.Rptr. at 909.

Another 1980 California case reached a similar conclusion. In Hathaway v. Superior Court of Fresno City, 112 Cal.App. 3d 728, 169 Cal.Rptr. 435, _____ P. 2d _____ (1980), plaintiff parents were not able to maintain an action for the negligent infliction of emotional distress when they did not sensorily perceive the fatal accident. In the Hathaway court's discussion of Molien, the current role of the Dillon test is analyzed: "It thus appears that the liability limiting criteria contained in Dillon are still applicable to bystander cases where emotional trauma is suffered by plaintiffs." Hathaway, 169 Cal.Rptr. at 440.

The most recent statement of emotional distress in Pennsylvania is the non-decision by the Pennsylvania Supreme Court in Yandrich v. Radic, (No. 80-2-323, Opinion filed July 10, 1981). A father sought to recover for emotional distress arising from the death of his son who had been struck by a motor vehicle. The father did not witness the accident and arrived on the scene after its occurrence. The court divided on the concept of foreseeability. Justice Nix emphasized that "foreseeability is a factor to be employed in determining the duty owed to the victim. Justice Flaherty considered foreseeability as solely an issue of fact.

While it is conceivable that the rationale of Molien v. Kaiser Foundation, supra, could be extended to include fact situations, such as the instant case, the California courts have not adopted this extension. After diligent research, we have been unable to find a case in any jurisdiction which has based

recovery for emotional distress on the post-accident observation of death.

In addition, in the instant proceedings, plaintiffs' action against a "laundry list" of defendants obscures the foreseeability aspects of Molien, supra, and fails to particularize the physical harm resulting from the emotional shock: Banyas v. Lower Bucks Hospital, (No. 836 Phila. 1980), Slip Opinion filed December 4, 1981. See Restatement (Second) of Torts, §436.

## CONCLUSION

To meet the emerging law of recovery for emotional distress stemming from a negligent act, plaintiff must meet not only the "foreseeability" test but the observation of the tortious act and physical injury resulting from the emotional disturbance. Plaintiffs have not met these prerequisites in Count VIII of the complaint and the preliminary objections are accordingly sustained.

An appropriate order is attached hereto.

## ORDER

And now, July 22, 1982, upon the preliminary objections of all defendants in the nature of a demurrer to Count VIII of the complaint, alleging emotional distress to parent-plaintiffs under the doctrine of Sinn v. Burd, 486 Pa. 146, 404 A. 2d 672 (1979) and it appearing to the court that Count VIII of the complaint, as stated, fails to state a cause of action, it is hereby ordered, adjudged, and decreed that said preliminary objections are sustained to the complaint as stated and Count VIII shall be stricken from said complaint.