[Civ. No. 26128. Second Dist., Div. Three. Mar. 27, 1963.]

J. MILLER LEAVY, Plaintiff and Respondent, v. TERRENCE W. COONEY et al., Defendants and Appellants.

Cooney & Cooney, Terrence W. Cooney and Matt D. Cooney for Defendants and Appellants.

Irwin O. Spiegel and Herbert Grossman for Plaintiff and Respondent.

SHINN, P. J.—The present action is for damages and an injunction. The damage issue was tried to a jury, which returned a verdict against Terrence Cooney and Sterling World Distributing Corporation, Inc., for $7,500 as compensatory damages and against Sterling for $35,000 as exemplary damages, which was reduced upon motion for a new trial to $7,500. Defendants made a motion for judgment notwithstanding the verdict, which was denied; they appeal from the judgment and from the order denying their motion.

The facts as established by the evidence and as found by the jury and the court are quite simple. Plaintiff was the prosecutor in the case of *People* v. *Caryl Chessman,* which plagued the courts of California for many years. Cooney conceived the idea of making a sound motion picture based

upon the prosecution and imprisonment of Chessman. Leavy, at the solicitation of Cooney, consented to and did appear before the cameras and was photographed; he also acted as narrator.

The verdict implies, and the court found, in accordance with the contentions of Leavy, that he permitted himself to be photographed and his voice to be recorded as one of the participants in the picture upon the express understanding and agreement with Cooney that the picture was to be shown only on television, and would not be shown in theaters; Cooney breached the agreement by contracting with Sterling for theatrical exhibition; Sterling knew that Cooney did not have the consent of Leavy for theatrical display, but nevertheless exhibited the picture in from 500 to 750 theaters, over the protest of Leavy, and in willful disregard of his rights. The award of compensatory damages was based upon the testimony of Leavy that he suffered humiliation and embarrassment because of his fear and apprehension that if the picture should be shown in theaters the public would think he was being compensated for his participation in the project, and he would be subjected to severe criticism.

The brief of defendants specifies some twenty-five claims of error in the trial. ▆▆ First to be considered is the contention that it was alleged in the answer of Cooney that Leavy executed a release of all claims he might have arising out of the use of the film. A copy of a release, which did not bear the signature of Leavy, was attached to the answer of Cooney, no affidavit of Leavy denying execution of the release was filed, and therefore, it is claimed, under section 448 of the Code of Civil Procedure, Leavy was precluded from denying that he executed the release. The point is untenable. One of the issues stated in the pretrial order was whether Leavy had executed the release; that issue was fully tried without objection by defendants, and they thereby waived the right to claim that execution of the release was admitted. (*Crowley* v. *City Railroad Co.*, 60 Cal. 628.)

▆▆ It is argued that there was insufficient evidence to prove an agreement between Leavy and Cooney that the picture would only be shown on television as a news broadcast, and was not to be shown in theaters. The record contains evidence which clearly was sufficient to prove an agreement which limited the exhibition to television. Leavy so testified, and there was evidence that Cooney, knowing that Leavy placed a limitation upon the use of the film, proceeded to

arrange for its exhibition in theaters. Upon these facts the jury and the court properly concluded that the theatrical use of the film was not authorized by Leavy.

With respect to compensatory damages it is contended on behalf of both defendants that no cause of action was established. Section 3300 of the Civil Code provides that, except where it has been otherwise provided, the measure of damages for breach of contract is the amount which will compensate the party aggrieved for the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom. The section has been construed as limiting the damages to matters that were within the contemplation of the contracting parties. (*Westervelt* v. *McCullough,* 68 Cal.App. 198 [228 P. 734].)

In order to maintain their argument of nonliability defendants take the position that possible injury to plaintiff's feelings from the unauthorized use of the film was not in the minds of Leavy and Cooney when they concluded their arrangement, and that no injury was shown as a proximate result of the breach of the agreement by Cooney. In their argument of the point defendants ignore the reason given by Leavy for refusing to sign a release which would have given consent to projection of the picture in theaters. His parting remark in the interview with Cooney was ''I have never made a dime out of any case in which I have participated and I am not going to make it appear as though I have.'' Cooney could not have failed to understand that Leavy believed that if the picture should be displayed in theaters the viewing public would suspect he had a commercial interest in it. The question for the jury was not whether the public would suspect a mercenary motive upon Leavy's part from use of the film in theaters and would not have the same suspicion when viewing it on television; it was what Leavy believed, and Cooney understood Leavy believed would be the public reaction to his participating in making the picture for display in theaters. The jury had the benefit of seeing and hearing Leavy as a witness. They believed his testimony as to his reason for not agreeing to the use of the film in theaters, and it was reasonable for the jury and the court to conclude that the parties had in contemplation that exhibition of the picture in theaters would cause Leavy embarrassment and humiliation.

The appeal is argued as if the action is only one for breach of contract, and we have considered the arguments for and

against liability under section 3300, Civil Code. We do not, however, take the view that the wrongful actions of the defendants consisted only of the violation of plaintiff's rights under the contract.

Sterling had no contract with Leavy, and its conduct was clearly tortious. The contract between Leavy and Cooney related only to exhibition on television, and the wrong of defendants consists not only in the breach of an agreement not to exhibit the film in theaters, but also in the fact that it could not, under any circumstances, be so exhibited without the consent of Leavy, which he had not given. Defendants had no more right to show the pictures in theaters than they would have had if Leavy had refused to permit it to be shown publicly at all.

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.)

As to Cooney the wrong consisted of breach of contract and also of a tortious invasion of Leavy's right of privacy; as to Sterling the wrong was the breach of an obligation not arising out of contract. The detriment caused to Leavy was the proximate result of the wrongs thus committed.

A further contention is that the compensatory damages are excessive. Defendants note that in *Fairfield* v. *American Photocopy etc. Co.*, 138 Cal.App.2d 82 [291 P.2d 194], we said that $1,500 was a generous allowance to an attorney for mental suffering due to the unauthorized use of his name to promote the sale of an office copying machine, and it is urged that we thereby set some sort of standard price to be paid as compensation for invasion of privacy. There is, of course, no such standard. An attorney might be suspected of having received money for endorsing office equipment and be chided by attorneys who worked harder for their fees, but this would bear little resemblance to the present case of a deputy district attorney who might be suspected of making money from participation in a motion picture of the tortured tribulations of a condemned prisoner whom he had prosecuted, and whose fate was still undecided. Any lawyer would cringe at the thought of being placed under such suspicion.

No rule is more firmly established than the one which leaves to the discretion and judgment of the trial court or jury the admeasurement of the detriment caused by mental

suffering and distress and the amount of compensatory damages. It is sufficient to say there was evidence of critical comments and questions addressed to Leavy by the district attorney, and others who had viewed the picture in theaters, sufficient to cause him to suffer distress and humiliation to a substantial degree. The compensatory damages were within the discretion of the jury and were not excessive.

Defendants mention cases which it is claimed support the statement in their brief: "There was no claim here of any physical injuries or suffering as a result of the breach of the purported agreement, therefore there can be no recovery for any mental suffering." In view of the case law of California, it is futile to advance this contention.

 One who has been wrongfully and intentionally subjected to embarrassment, humiliation, fear or other forms of mental anguish may recover compensatory damages even though he has suffered no physical injury. Any doubt that may have existed as to the right to recover for purely mental and emotional suffering was removed by the decisions in *Fairfield* v. *American Photocopy etc. Co., supra,* 138 Cal.App.2d 82 and *State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330 [240 P.2d 282], which also held that the right to compensation exists even though no monetary loss has been sustained.

 On behalf of Sterling it is contended that the exhibition of the film in theaters was privileged and protected by a constitutional right to disseminate news, and it is also argued that the material of the film was already in the public domain. These contentions are untenable.

The incidents shown in the picture were not those that occurred in the course of court proceedings. They followed a script, the scenes were all arranged and the parts were played as they would be in a motion picture filmed in a studio, or upon a set employed for that purpose. The action was not of anything that had taken place in public or as a part of regular court proceedings. Instead of being dissemination of news, it was fictional, as any motion picture is that is a re-enactment of past events, or the filming of scenes that are the product of someone's imagination. The occurrences that were pictured took place for the first and only time before the cameras. The venture was purely commercial. The picture was not in any sense the dissemination of news. What else it could be called is a matter of opinion.

 In contending further that Sterling was not guilty of conduct which would justify either compensatory or exem-

plary damages, defendants are confronted with the evidence and the findings of the court and jury that on February 23, 1960, Sterling acquired actual notice that Leavy had not authorized his appearance and performance, as embodied in the film, to be exhibited theatrically; plaintiff requested that Sterling delete his appearance and performance from the film in connection with any theatrical exploitation, but Sterling thereafter, with knowledge of the limitations and conditions of plaintiff's oral agreement with Cooney, proceeded with theatrical exhibition of the film. These findings are amply supported by the evidence.

When the picture was first shown in theaters, Gunther Schiff, Sterling's attorney in the matter of the picture in question, received a telephone call which induced him to telephone Leavy. In the conversation he was informed by Leavy that Cooney had no right to exhibit the picture except on television. He was then contacted by Mr. Grossman, one of Leavy's attorneys, and given the same information, and he learned in these conversations that Leavy was contemplating taking legal action. Mr. Schiff immediately reported these facts to Sterling. Although exhibition of the picture had barely commenced, and by far the greater proportion of the prints of the film had not been received, Sterling proceeded with the plans for theatrical exhibition, and, as previously stated, caused the picture to be shown in some 500 to 750 theaters.

It is contended that these facts did not justify an award of exemplary damages against Sterling. It is a vain contention. Section 3294 of the Civil Code provides that exemplary damages may be awarded where the defendant has been guilty of oppression, fraud or malice. The exhibition of the film in theaters with knowledge that the same was without the consent and contrary to the wishes of Leavy was deliberate, and scornful of Leavy's rights in the premises.

It was alleged in the complaint that the use of the picture by Sterling was unauthorized and done with intent to injure Leavy. The evidence justified the implied finding of the jury that these allegations were true. Therefore, a conclusive presumption arose that Sterling acted with malicious and guilty intent. (Code Civ. Proc., § 1962, subd. 1; *Morgan* v. *French*, 70 Cal.App.2d 785 [161 P.2d 800]; *Sterling Drug, Inc.* v. *Benatar*, 99 Cal.App.2d 393 [221 P.2d 965]; *James* v. *Herbert*, 149 Cal.App.2d 741 [309 P.2d 91].)

Error is assigned in the receipt in evidence of a letter written by Cooney addressed to Telenews Distributing Company,

a company that was then planning to use the film, a copy of which letter was sent to Mr. Barkdull of the Department of Corrections. We can discern no purpose in the offer of this evidence or in the objection to it. Aside from an outline of the circumstances in which Chessman would be photographed the letter stated only that it was planned to offer the film to CBS television for programing, and if it was not acceptable to them to offer it to other channels. Cooney had testified to the same facts without objection, and in his testimony he admitted having discussed CBS television with Leavy in their first interview. There was no error in the receipt of the copy of the letter in evidence.

 It is contended that the court erred in the matter of instructions. Two of the instructions requested by defendant would have informed the jury that recovery could only be had if there was physical injury. The instructions were corrected to eliminate this erroneous statement. Also the court struck out in another of defendants' instructions the words ''it is only where the intrusion goes beyond the limits of decency that liability accrues.'' Obviously, this statement was correctly eliminated. Complaint is made of the refusal to give defendants' instruction: ''The constitutional guarantees of freedom of expression apply with equal force to the publication whether it be a news report or an entertainment feature.'' The refusal of this instruction was obviously proper.

 Defendants were enjoined from further exhibition of the picture in theaters, or similar places, unless the portions showing Leavy's participation were deleted. Of this the brief of defendants says: ''The court based its findings upon the same evidence as was presented to the jury. It is respectfully submitted that if the evidence is insufficient as a matter of law to impose liability of Appellants for breach of contract or unauthorized commercial use, it would be insufficient as a matter of law with respect to the issuance of an injunction.'' We need only add that since the evidence was sufficient to prove the wrongful invasion of plaintiff's rights, it was the duty of the court to enjoin further commission of the wrongful conduct.

There are other claims of error advanced by defendants, but none which call for particular discussion. The right of plaintiff to the legal and equitable relief that was granted was clearly established. The case was tried without error and with a reasonable and fair result.

The judgment and order appealed from are affirmed.

Ford, J., and Files, J., concurred.

A petition for a rehearing was denied April 17, 1963, and appellants' petition for a hearing by the Supreme Court was denied May 22, 1963.