[Civ. No. 5648. Fifth Dist. Nov. 26, 1980.]

GREGORY LEE HATHAWAY et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
FRANK HENDRIX, Real Party in Interest.

COUNSEL

Archbald & Spray, J. William McLafferty, Jr., and Ann G. Diener for Petitioners.

No appearance for Respondent.

Dawson & Ninnis and Jeffrey H. Smith for Real Party in Interest.

OPINION

BROWN (G. A.), P. J.—Petitioners, Gregory Lee Hathaway and Laura Jane Hathaway, seek a peremptory writ directing the superior court to set aside its order granting a partial summary judgment to the real party in interest, Frank Hendrix.

Petitioners are the father and mother of Michael Hathaway, age six, deceased. They commenced the underlying action against real party in interest and others for wrongful death, and in the fifth cause of action of their complaint sought to state a cause of action against real party in interest and others upon the theory of negligently inflicted emotional distress resulting in physical injuries. The court below granted real party's motion for summary judgment on the fifth cause of action upon the ground that petitioners had not suffered emotional distress as a result of direct emotional impact from the sensory and contemporaneous observance of the accident which caused their son's death as contrasted with learning of the accident from others after its occurrence. We agree and deny the writ.

FACTS

Mr. Hathaway was the brother-in-law of Bill Clayton who rented his house from real party in interest. Hathaway and Clayton installed an evaporative cooler at the Clayton house. The cooler was installed and running by 2 p.m. They and their wives went into the house and were in the bedroom resting.

Petitioner's son, Michael, and another child, Randa, were outside playing hide and seek and also with the water hose. Mrs. Hathaway heard Michael make "a noise." Mrs. Hathaway described the noise as "ahhh." The noise was not like a scream or a cry and it did not alarm her. Shortly thereafter petitioners heard Randa say "Let go, Michael, let go." Mrs. Hathaway thought the children were playing and Randa was trying to get Michael to let go of the hose.

Petitioners and the Claytons went into the living room just after Randa yelled at Michael to "let go." There was no special reason, other than to continue their conversation in the living room. Petitioners and the Claytons had just gotten to the living room when Randa came into the house. Randa looked scared and said "something was wrong with Michael." Perhaps one minute had passed between the time Randa said "Let go, Michael" and when Randa came into the house to tell petitioners something was wrong. Mrs. Hathaway testified in her deposition: "It was just a matter of seconds or a minute. Because we had just left the bedroom and we was standing in the living room when she came in." "I don't know the exact time." "So I would say a minute or two." Mr. Hathaway had no estimate of the time period.

After Randa said something was wrong with their son, petitioners went outside. Michael was lying in a puddle of water by the cooler. Mr. Hathaway picked him up and laid him on some nearby grass. Petitioners, Mr. Clayton and a neighbor tried to revive Michael.

When he was discovered by petitioners Michael had a recognizable pulse. Mrs. Hathaway was not sure if he was breathing. Michael was gagging and spitting up. It was about 6 p.m.

The declarations of petitioners state Michael was electrocuted when he touched the cooler. Both parents watched efforts to save the boy's life and observed him in a "dying state." Michael died.

A doctor's declaration indicates that electrocution causes death because it interrupts the beating of the heart and the heart muscle itself is denied a blood supply. Depending upon the severity of the electrical shock the process can take time.

## DISCUSSION

Petitioners argue that under the principles of the landmark case of *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d, 1316], the issue of whether "shock resulted from a direct emotional impact upon [them] from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence" is one of fact and should not have been resolved upon the motion for summary judgment. (Code Civ. Proc., § 437c.)

In *Dillon* the court faced a factual situation where the mother of a child personally witnessed an accident in which the driver of a vehicle negligently allowed his vehicle to collide with the mother's child. The mother was not within the "zone-of-danger." The trial court granted judgment to the defendant on the pleadings. In contrast, the child's sister, who also observed the accident but was within the zone-of-danger, was able to maintain an action for emotional distress (with consequent bodily illness). The *Dillon* court stated: "The case thus illustrates the fallacy of the rule that would deny recovery in the one situation and grant it in the other. In the first place, we can hardly justify relief to the sister for trauma which she suffered upon apprehension of the child's death and yet deny it to the mother merely because of a happenstance that the sister was some few yards closer to the accident. The instant case exposes the hopeless artificiality of the zone-of-danger rule." (68 Cal.2d at p. 733.)

The court went on to hold that the mother's case could proceed, and the judgment of dismissal was reversed. (*Id.*, at p. 748.)

The *Dillon* court recognized the "potentially infinite liability" which could occur as a result of its decision, and in an effort to restrict that possibility set forth three criteria to apply in determining whether a defendant owes a plaintiff a duty of care. They are: "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Id.*, at pp. 740-741.)

We are here concerned only with the second requirement.

There have been two Supreme Court cases since *Dillon* and, except to the extent the sensory observation requirement has been extended by *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 76 [137 Cal.Rptr. 863, 562 P.2d 1022] to include in the term "observance" a perception through any of the senses (not just a visual perception), that court and most of the appellate courts have applied rather strictly the requirement that the injury-producing event itself be observed.

Thus in *Justus v. Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122] the court affirmed a judgment of dismissal after the sustaining of a demurrer upon the ground the second requirement was not satisfied as a matter of law. In that case plaintiff husbands were in attendance in the hospital delivery room during child delivery by their wives and while watching the procedure were informed by the attending physician that the fetus had died. The deaths were caused by a prolapse of the umbilical cord.

As to each plaintiff the court observed: "[E]ach complaint paints the following picture: the plaintiff husband witnessed certain disturbing developments in the delivery room, including expressions of concern by the medical staff and use of emergency procedures. Whether the described events constitute negligence is questionable, but they no doubt induced a growing sense of anxiety on the plaintiff's part. Yet his anxiety did not ripen into the disabling shock which resulted from the death of the fetus until he was actually informed of that event by the doctor; prior to that moment, as a passive spectator he had no way of knowing that the fetus had died. In short, the impact derived not from what he saw and heard during the attempted delivery, but from what he was told after the fact. As we have seen, however, a shock caused by 'learning of the accident from others after its occurrence' (68 Cal.2d at p. 741) will not support a cause of action under *Dillon*." (19 Cal.3d at p. 585.) The court further observed that: "Here, although each plaintiff was in attendance at the death of the fetus, that event was by its very nature hidden from his contemporaneous perception: he could not see the injury to the victim as in *Mobaldi* [*Mobaldi* v. *Board of Regents* (1976) 55 Cal.App.3d 573 (127 Cal.Rptr. 720)], nor could he otherwise sense it as in *Archibald* [*Archibald* v. *Braverman* (1969) 275 Cal.App. 2d 253 (79 Cal.Rptr. 723)] or *Krouse* [*Krouse* v. *Graham, supra*, 19 Cal.3d 59]." (19 Cal.3d at p. 584.)

The other Supreme Court case is *Krouse v. Graham, supra*, 19 Cal. 3d 59. In that case, the plaintiff husband was sitting in the driver's seat of his parked car while his wife unloaded groceries from the back seat; the defendant's vehicle suddenly approached from the rear at a high speed, straddled the curb, and struck and killed his wife before colliding with the parked car. The court reaffirmed the strict requirement of *Dillon* that the injury-producing event be perceived and held that, although the husband did not actually see his wife being struck by the defendant's car, he nevertheless perceived the event by other than visual means: "...he knew her position an instant before the impact, observed

defendant's vehicle approach her at a high speed on a collision course, and realized that defendant's car must have struck her." (*Id.*, at p. 76.)

A steady flow of Court of Appeal cases have continued to strictly apply a contemporaneous sensory perception requirement of *Dillon.* For example, in *Parsons v. Superior Court* (1978) 81 Cal.App.3d 506 [146 Cal.Rptr. 495], the court issued mandate directing the trial court to set aside its order and to enter an order granting petitioner defendant's motion for summary judgment. Plaintiffs were driving their automobile following their daughters who were riding in defendant's vehicle preceding them along a winding road. The plaintiffs rounded a curve in the road and saw the wreckage of the vehicle in which their daughters had been riding against a telephone pole. Their daughters were dead or dying. Plaintiffs did not see or hear the accident but it could not have taken place more than a few moments before they arrived on the scene. The father testified that he reached the wreckage of the car "before the dust had settled." (*Id.*, at pp. 508-509.) The court held that since plaintiffs did not see, hear or otherwise sensorily perceive the injury-producing event there could be no recovery, the *Dillon* requirement of a direct emotional impact upon the plaintiffs from sensory contemporaneous observance of the accident not having been met. (*Id.*, at p. 512.)

. For cases arriving at the same result upon the same or similar rationale see *Arauz v. Gerhardt* (1977) 68 Cal.App.3d 937 [137 Cal.Rptr. 619]; *Hair v. County of Monterey* (1975) 45 Cal.App.3d 538 [119 Cal.Rptr. 639]; *Powers v. Sissoev* (1974) 39 Cal.App.3d 865 [114 Cal. Rptr. 868]; *Jansen v. Children's Hospital Medical Center* (1973) 31 Cal.App.3d 22 [106 Cal.Rptr. 883]; *Deboe v. Horn* (1971) 16 Cal. App.3d 221 [94 Cal.Rptr. 77].

The cases upon which petitioner relies show a tendency toward a slight relaxation of the rule but all have been reconciled with the rule by the Supreme Court or by other Court of Appeal cases. Thus, in *Archibald v. Braverman* (1969) 275 Cal.App.2d 253 [79 Cal.Rptr. 723], a mother sought to recover for her emotional distress with physical injury which she experienced when the defendant sold to her 13-year-old son gunpowder which exploded, causing severe injury to the boy. The mother arrived at the scene of the explosion "within moments" of the explosion to render aid and suffered her injury upon observing her son's condition. *Archibald* has been explained in numerous cases on the ground that the mother heard the explosion and therefore sensorily perceived it. (See, e.g., *Krouse v. Graham, supra*, 19 Cal.3d 59, 76;

*Justus* v. *Atchison, supra*, 19 Cal.3d 564, 584; *Jansen* v. *Children's Hospital Medical Center, supra*, 31 Cal.App.3d 22, 24.)

In *Mobaldi* v. *Regents of University of California* (1976) 55 Cal. App.3d 573 [127 Cal.Rptr. 720], a foster mother watched physicians administer a solution into the foster child's veins while the foster mother was holding the child in her arms. The solution was to have contained 5 percent glucose but instead contained 50 percent. The child became spastic, convulsant and finally comatose. The foster mother screamed, but by that time the child had received 150 cc's of the solution and suffered severe physical injury as a result. (*Id.*, at p. 578.)

The Supreme Court in *Justus* v. *Atchison, supra*, 19 Cal.3d at page 583, explains *Mobaldi* as being a case where "the mother was a percipient witness to the accident even though she was unaware at the time of the negligence which caused it."

In *Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553 [145 Cal. Rptr. 657], the court held the plaintiff should be allowed to go to trial in a procedural setting identical to that before us. The facts of the case were that a mother was looking for her three-year-old son and was speaking to a neighbor about her son's whereabouts. She heard a different neighbor scream, "It's Danny," and immediately had the dreadful knowledge that Danny had somehow gotten into a neighbor's swimming pool and that he was hurt. She was approximately 30 feet from the entrance to the pool area when she heard the scream. She ran toward the pool and saw her son being pulled from the pool; he was partly in and partly out. Three days later the boy died. On evidence conflicting as to the time and circumstances of the mother's arrival at the pool, the court found a triable issue of fact, concluding that "We cannot say as a matter of law that the injuries resulting from defendants' negligence were not still being experienced at the time the mother first observed her son." (*Id.*, at p. 567.)

The court in *Parsons* v. *Superior Court, supra*, 81 Cal.App.3d 506, 511, concluded that *Nazaroff* is not inconsistent with the *Parsons* holding because "[t]he inference of auditory perception...is satisfied in *Nazaroff* by the mother's declaration that she missed her son and was searching for him in the neighborhood when she heard a cry from the neighbor's pool area, 'It's Danny.' She immediately sensed that Danny had fallen into the pool and was hurt. As she ran toward the pool, she saw him being pulled from the water." We make the further observa-

tion that a jury could also properly conclude upon hearing all of the evidence that the accident (drowning) was still in progress and was observed since the mother visually perceived the boy being pulled from the pool while still alive.

■ In the case at bench Michael was no longer gripping the water cooler and receiving the electrical charge. The event which constituted the accident had ended. It is uncontradicted that petitioners did not sensorily perceive the injury-causing event, that is, the actual contact between the electrically charged water cooler and Michael, but saw only the results of the contact (the injuries) after the accident was over. The parents had no thought of injury when they heard Michael's playmate, Randa, say "Let go, Michael, let go," which is to be contrasted with the situation in *Nazaroff*. It was a minute or two later, after the parents had drifted into the living room from the bedroom, that Randa first alerted them to something being wrong with Michael. We conclude that because there has been no showing that petitioners saw, heard, or otherwise sensorily perceived the injury-producing event, the *Dillon* requirement of a "direct emotional impact upon [petitioners] from the sensory and contemporaneous observance of the accident" has not been met. Petitioners perceived an injury to their son after its occurrence, as compared with the facts in *Mobaldi*.

We granted a rehearing in this case to consider the effect on the instant case, if any, of the recent Supreme Court decision in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813], filed August 25, 1980. *Molien* presented a rather unique fact situation and was not a bystander case. The plaintiff husband alleged that his wife went to Kaiser Hospital for a routine physical examination and that she was diagnosed as having an infectious type of syphilis. Kaiser instructed her to advise plaintiff husband of the diagnosis, and thereafter he was required to undergo blood tests to see if he had syphilis and was the source of his wife's infection. The tests revealed he did not have the disease, and it was determined later that the wife did not have syphilis either, the diagnosis by Kaiser having been wrong.

As a result of the erroneous diagnosis plaintiff's wife became upset and suspicious that plaintiff had engaged in extramarital sexual activities. Tensions mounted, and the marriage broke up. The plaintiff also alleged Kaiser knew or should have known that misdiagnosis of his wife

and statements he might also have syphilis would cause him emotional distress. No physical injuries were alleged.

The principal holding of the case is that physical injury is no longer a necessary element to a recovery for negligent infliction of serious mental and emotional distress. (*Id.*, at pp. 928-931.)

Turning to the issue with which we are concerned in the case at bench, the *Molien* court held that *Dillon* "...is apposite, but not controlling." (27 Cal.3d at p. 921.) The court cited *Justus* v. *Atchison, supra*, 19 Cal.3d 564, with approval and distinguished the *Dillon*-type case (bystander case) because "[h]ere, by contrast, plaintiff was himself a direct victim of the assertedly negligent act" (*id.*, at p. 923), and further observed that "We thus agree with plaintiff that the alleged tortious conduct of defendant was directed to him as well as to his wife" (*ibid.*). It thus appears that the liability limiting criteria contained in *Dillon* are still applicable to bystander cases where emotional trauma is suffered by plaintiffs. The case at bench is a bystander case. (See *Cortez* v. *Macias* (1980) 110 Cal.App.3d 640 [167 Cal.Rptr. 905]— distinguishing *Molien* upon the same ground.)

The petition is denied.

Thompson, J.,* and Pierson, J.,† concurred.

Petitioners' application for a hearing by the Supreme Court was denied January 21, 1981. Bird, C. J., was of the opinion that the application should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

†Assigned by the Chairperson of the Judicial Council.