[Civ. No. 30378. Fourth Dist., Div. Three. July 31, 1984.]

JULIA WIGGINS, Plaintiff and Appellant, v.
ROYALE CONVALESCENT HOSPITAL,
Defendant and Respondent.

COUNSEL

H. Gene Collins for Plaintiff and Appellant.

Alevizon, Smith & Lawrence and Mark Susson for Defendant and Respondent.

---

**OPINION**

**TROTTER, P. J.**—Julia Wiggins (plaintiff) sued Royale Convalescent Hospital (defendant) for emotional distress damages arising from defendant's negligent care of her husband. She appeals from the judgment of dismissal following the sustaining of defendant's demurrer on the ground the complaint failed to state facts sufficient to constitute a cause of action. Plaintiff contends the trial court erred by misconstruing *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] and by sustaining the demurrer without leave to amend. We disagree and affirm the judgment.

The complaint alleges the following facts which are presumed true for purposes of our review (*Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 209 [163 Cal.Rptr. 445]): Plaintiff placed her terminally ill husband in defendant's care in October 1980. In November, he was seriously hurt in a fall from his bed after defendant failed to raise the bed's safety rails. Defendant knew, or should have known, husband would fall and be injured without safety rails; and plaintiff would suffer emotional distress as a result, even though she was not present. Due to defendant's negligence, plaintiff experienced great mental, physical, and nervous pain and anguish.

I.

The record before us indicates the trial court asked plaintiff's counsel several times if he desired leave to amend the complaint. In response, he would either decline or argue against sustaining the demurrer. We conclude he elected not to amend the complaint, thus the trial court did not abuse its discretion in denying him leave to amend. Further, it is presumed plaintiff's complaint set forth her strongest possible case. (See *Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 127 [185 Cal.Rptr. 878].)

Our colleague in dissent seems to overlook plaintiff's counsel's refusals and avers ". . . plaintiff should have been permitted to amend to state a cause of action . . . ." (See dis. opn., *post*, pp. 920-921.) However, we choose to accept counsel's statements as determinative of whether the court abused its discretion in ruling. To hold otherwise would create confusion and further restrict trial court discretion. Once counsel states he is unable

to amend to set forth different or additional facts it cannot be an abuse of discretion for a trial court to refuse leave to amend.

## II.

Plaintiff acknowledges she has not stated a cause of action under the *Dillon* "bystander" rule of foreseeable harm. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) While the closeness factor is satisfied by her marital relationship, neither the proximity to the scene nor the contemporaneous observance factors have been met. (*Id.,* at pp. 740-741.) And *Dillon's* progeny have generally required a direct emotional impact upon the plaintiff from a "sensory and contemporaneous observance" of the accident. (See cases reviewed in *Justus* v. *Atchison* (1977) 19 Cal.3d 564, 582-584 [139 Cal.Rptr. 97, 565 P.2d 122]; *Hathaway* v. *Superior Court* (1980) 112 Cal.App.3d 728, 732-736 [169 Cal.Rptr. 435]; *Cortez* v. *Macias* (1980) 110 Cal.App.3d 640, 649-650 [167 Cal.Rptr. 905].) ■ However, contrary to plaintiff's argument, we are not persuaded her case falls within the ambit of *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916.

In *Molien,* the defendant physicians negligently misdiagnosed syphilis in examining the plaintiff's wife. They advised her to inform her husband who was thereafter tested for the disease with negative results. The misdiagnosis caused marital discord and led to the initiation of dissolution proceedings. The plaintiff husband sued for negligent infliction of emotional distress and loss of consortium caused by the misdiagnosis and its effects upon his marriage. The trial court sustained demurrers to both causes of action.

Reversing the trial court, the *Molien* court held a cause of action may be stated for negligent infliction of emotional distress without accompanying physical injury. (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at pp. 928-931.) Rather than overruling *Dillon,* the court noted it was "apposite but not controlling." (*Id.,* at p. 921.) The court then distinguished the plaintiff in *Molien* as a "direct victim," as opposed to the "percipient witness" plaintiff in *Dillon.* (*Id.,* at pp. 922-923.) "In the case at bar the risk of harm to plaintiff was reasonably foreseeable to defendants. It is easily predictable that an erroneous diagnosis of syphilis and its probable source would produce marital discord and resultant emotional distress to a married patient's spouse; Dr. Kilbridge's advice to Mrs. Molien to have her husband examined for the disease confirms that plaintiff was a foreseeable victim of the negligent diagnosis. Because the disease is normally transmitted only by sexual relations, it is rational to anticipate that both husband and wife would experience anxiety, suspicion, and hostility when confronted with what they had every reason to believe was reliable medical evidence of a particularly

noxious infidelity. [¶] We thus agree with plaintiff that the alleged tortious conduct of defendant was directed to him as well as to his wife. Because the risk of harm to him was reasonably foreseeable we hold, in negligence parlance, that under these circumstances defendants owed plaintiff a duty to exercise due care in diagnosing the physical condition of his wife." (*Id.*, at p. 923.)

In the instant case, plaintiff is not a "direct victim." Her emotional distress is derived *solely* from injuries to her husband. By contrast, the tortious conduct of the *Molien* defendant was directed "to him [the plaintiff] as well as his wife." (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 923.) Furthermore, *Molien* presented a complex question of tort liability where the *nature* of the misconduct made the plaintiff a "direct victim." (*Id.*, at p. 923.) No such problem is presented here.

### III.

Plaintiff refers in her opening brief to *Allen* v. *Jones, supra,* 104 Cal.App.3d 207 and *Wynn* v. *Monterey Club* (1980) 111 Cal.App.3d 789 [168 Cal.Rptr. 878], and contends her complaint pleaded a cause of action for emotional distress based on negligent breach of contract. However, plaintiff did not present this theory of recovery to the trial court. Her complaint sounds only in tort and does not fall within the purview of either *Allen* or *Wynn.*

In *Allen,* the complaint alleged the plaintiff made an oral agreement with defendant mortician to cremate the body of the plaintiff's brother and ship the remains to Illinois; and that, due to the defendant's negligence, the package was lost in transit. The plaintiff suffered emotional distress as a result. (*Allen* v. *Jones, supra,* 104 Cal.App.3d at pp. 209-210.) The *Allen* holding is restricted to allowing recovery for emotional distress damages "without physical injury for negligent mishandling of a corpse by a mortuary." (*Id.*, at p. 214.) The dissent finds some support in *Allen* for emotional distress damages based on *breach of contract.* She is wrong; "It is neither necessary nor appropriate for us in this case to take that giant leap for mankind espoused by the concurring opinion. We need only take the modest step, consistent with common law tradition, of declaring the law applicable to the case at hand. Our decision today hopefully clarifies California law on liability for *negligent* mishandling of corpses by bringing it into conformity with the views expressed by Professor Prosser, the Restatement and modern decision from sister states." (*Id.*, at p. 215, italics added.)

In *Wynn,* the plaintiff sued two gambling clubs alleging his wife, a known compulsive gambler, had incurred substantial debts in the defendants' es-

tablishments. "I think it pertinent, however, to point out that any logical analysis of the contract at bench shows that it was the clear intent of the husband plaintiff and it was so understood by defendants that defendants deny monetary credit to plaintiff's wife and specifically that they refrain from cashing her checks." (*Wynn* v. *Monterey Club, supra,* 111 Cal.App.3d 789, 801 (conc. opn. of Roth, P. J.).) "The gravamen of plaintiff's complaint against defendants is that defendants, by deliberately or negligently breaching their contract, caused the disruption of the marriage, which resulted in plaintiff suffering physical and emotional distress compensable by way of general and punitive damages." (*Id.,* at p. 795.)

In *Wynn* the main contention on appeal was the legality of the contract, the trial court granted summary judgment finding it to be illegal and unenforceable. The *Wynn* court reversed finding the contract to be legal and then observed, "[t]he remaining question, and one which neither of the parties has addressed, is whether the type of damage claimed by plaintiff is compensable beyond the return of the initial consideration, i.e., the $1,750. The trial judge in overruling demurrers to the complaint determined that plaintiff had pleaded a cause of action. Our denial of the petition for mandate affirmed that determination. Nothing presented at the hearing on the motion for summary judgment detracts from that determination." (*Wynn* v. *Monterey Club, supra,* 111 Cal.App.3d at p. 799.) Thus *Wynn* only set aside a summary judgment based on the legality of a contract and observed it had denied a petition for mandate seeking overturn of the trial court's determination a cause of action had been pleaded.

The *Wynn* court then cited *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, a case based upon a negligence cause of action, as precedent for emotional distress damages arising out of a breach of contract. It further supported its reasoning by reference to *Leavy* v. *Cooney* (1963) 214 Cal.App.2d 496 [29 Cal.Rptr. 580] which, the *Wynn* court stated, found pure mental and emotional suffering to be compensable in a breach of contract case. In discussing *Leavy,* the *Wynn* court said: "There it was held that the contracting parties contemplated that a breach of the contract would result in 'humiliation and embarrassment' to the plaintiff." (*Wynn* v. *Monterey Club, supra,* 111 Cal.App.3d at p. 801.) However, the *Leavy* case is not so easily compartmentalized. There J. Miller Leavy, the well known prosecutor in the infamous *Caryl Chessman* case had at the request of defendant appeared in the making of a film concerning the prosecution and imprisonment of Chessman. Leavy, however, fearful the public might think he was being compensated for his participation, demanded the film be shown only on television. A second defendant, Sterling, knowing defendant Cooney did not have Leavy's consent, exhibited the film in 500 to 750 theaters. Leavy sued for breach of contract and tortious invasion of his right of pri-

vacy. The court in affirming plaintiff's award stated, "[t]he appeal is argued as if the action is only one for breach of contract, and we have considered the arguments for and against liability under section 3300, Civil Code. We do not, however, take the view that the wrongful actions of the defendants consisted only of the violation of plaintiff's rights under the contract. [¶] Sterling had no contract with Leavy, and its conduct was clearly tortious. The contract between Leavy and Cooney related only to exhibition on television, and the wrong of defendants consists not only in the breach of an agreement not to exhibit the film in theaters, but also in the fact that it could not, under any circumstances, be so exhibited without the consent of Leavy, which he had not given. Defendants had no more right to show the pictures in theaters than they would have had if Leavy had refused to permit it to be shown publicly at all. [¶] 'For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.' (Civ. Code, § 3333.) [¶] As to Cooney the wrong consisted of breach of contract and also of a tortious invasion of Leavy's right of privacy; as to Sterling the wrong was the breach of an obligation not arising out of contract. The detriment caused to Leavy was the proximate result of the wrongs thus committed." (*Leavy* v. *Cooney, supra,* 214 Cal.App.2d at pp. 500-501.) We thus question the *Wynn* court's citation and reliance on *Leavy.*

We note no court has taken the quantum leap in reasoning and law urged in the dissent and we refuse to plunge into an uncharted and limitless sea of liability; further it is not necessary to a resolution of the issue before us.

Judgment is affirmed.

Wallin, J., concurred.

**SONENSHINE, J.**—I respectfully dissent. The plaintiff's pleadings state a cause of action under *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] and plaintiff should have been permitted to amend to state a cause of action under *Wynn* v. *Monterey Club* (1980) 111 Cal.App.3d 789 [168 Cal.Rptr. 878]. I would reverse the trial court's judgment of dismissal following the sustaining of defendant's demurrer.

As the trial court and majority correctly state, no duty is owed to plaintiff under *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. But plaintiff did not plead and is not now relying on *Dillon.* Plaintiff argued a duty *to her* was created when she placed her husband in the care of the defendant convalescent hospital. She alleged

"defendant knew, or should have known, husband would fall and be injured without safety rails; and plaintiff would suffer as a result." The court erred in failing to consider whether a duty was directly owed to plaintiff based on the cause of action she pleaded.

Prior to *Molien,* California courts were reluctant to impose a duty on defendants, absent a simultaneous physical injury, which would allow plaintiffs to recover damages for negligently inflicted emotional distress. Because of the intangible nature of the claim courts were concerned about the possibility of fraud and the difficulty of proof. The court in *Sloane* v. *Southern California Railway Company* (1896) 111 Cal. 668 [44 P. 320] established the impact rule which allowed emotional distress damages only as a consequence *of another cause of action* and only if there was physical *impact.*[1] This rule was expanded to the zone of danger test in *Amaya* v. *Home Ice, Fuel and Supply Co.* (1963) 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513]. *Amaya* and its progeny allowed recovery if the plaintiff was in a zone where physical injury could reasonably be anticipated and feared.

Five years later our Supreme Court decided *Dillon* v. *Legg, supra,* 68 Cal.2d 728 and held liability was to be determined by foreseeability. The court reiterated physical injury or fear of it had to be established by a plaintiff in order to seek emotional distress damages. But, in rejecting the zone of danger test, the court stated a breach of duty will have occurred if a " 'defendant should foresee fright or shock severe enough to cause a substantial injury in a person normally constituted.' " (*Id.,* at p. 740.) Guidelines were suggested to determine foreseeability but the lower courts were admonished to apply them on a "case-to-case" basis. (*Id.,* at p. 741.)[2]

The requirements of *Sloane, Amaya* and *Dillon* have been interpreted in many ways. California and other jurisdictions have long allowed recovery for emotional distress without a physical injury when the tort was intentional.[3] In *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173], a plaintiff was allowed to plead emotional distress damages when her insurance company failed to settle within her policy limits. The court found *her other claims* for breach of covenants to insure and defend

---

[1]The facts and reasoning of *Sloane* are noteworthy. The plaintiff sued the defendant railroad for breaching its duty to deliver her to the correct destination. The court thus allowed tort damages based on a breach of contract claim.

[2]The guidelines are: (1) the proximity of plaintiff to the scene of the accident; (2) the direct emotional impact upon the plaintiff from the sensory and contemporaneous observation of the accident; and (3) the closeness of the relationship of the plaintiff and victim.

[3]In *Wilkinson* v. *Downton* (1897) 2 Q.B. 57, a wife was allowed to recover for her emotional distress after having been intentionally and incorrectly told her husband was in an accident and was lying in a ditch with two broken legs.

and for breach of the covenant of good faith and fair dealing were sufficient to guarantee the validity of her emotional distress claim.

Similarly, the courts have allowed claims for emotional distress where the defendant's conduct is "extreme or outrageous"[4] or for "exceptional classes of cases where emotional suffering is a highly probable consequence of negligence or breach, primarily cases of corpse mishandling and negligently transmitted death notices." (Blackmer, *Molien v. Kaiser Foundation Hospitals: Negligence Actions for Emotional Distress and Loss of Consortium without Physical Injury, supra,* 69 Cal.L.Rev. 1142, 1153.)

## II

The court in *Molien v. Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916 held a *separate* cause of action may be stated for the negligent infliction of serious emotional distress *without* any showing of physical injury. "[T]he unqualified requirement of physical injury is no longer justifiable." (*Id.,* at p. 928.) "The essential question is one of proof; whether the plaintiff has suffered a serious and compensable injury . . . is a matter of proof to be presented to the trier of fact. *The screening of claims on this basis at the pleading stage is a usurpation of the jury's function.*" (*Id.,* at pp. 929-930, italics added.)

Our plaintiff states a cause of action for emotional distress, even in the absence of physical injuries, if she can establish she was a direct victim of defendant's negligence as defined in *Molien.*

The direct victim concept enunciated in *Molien* is not a revolutionary idea or even an extension of tort law. It is rather an acknowledgment of the most basic of tort principles: "[E]very case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct." A duty exists in all situations and "[a]ny number of considerations may justify the *imposition* of duty in particular circumstances, . . ." (*Weirum v. RKO General,*

---

[4]"This test is the subject of RESTATEMENT [(2d) OF TORTS] (1965) *supra* note 4, § 46, which defines outrageous conduct causing severe emotional distress: '(1) one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' Further provisions extend liability for distress resulting from outrageous conduct, intentional or 'reckless,' directed at a third person, if the plaintiff is closely related and present at the time, or if the plaintiff is unrelated to the victim but suffers bodily harm from the emotional distress. (*Id.* § 46(2)." (Blackmer, *Molien v. Kaiser Foundation Hospitals: Negligence Actions for Emotional Distress and Loss of Consortium without Physical Injury* (1981) 69 Cal.L.Rev. 1142, 1154, fn. 58.)

*Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36], italics added.)

Duty is not easily defined, but any "departure from [the principle of a duty to exercise ordinary care] involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [443 P.2d 561, 32 A.L.R.3d 496].)

In *Molien,* "the risk of harm to plaintiff was reasonably foreseeable to defendants. . . . [¶] . . . [T]he alleged tortious conduct of defendant was directed to [her] as well as to [her husband]. Because the risk of harm to [her] was reasonably foreseeable . . . defendants owed plaintiff a duty to exercise due care in [attending to] the physical condition of [her husband]." (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 923.)

The *Molien* court did accept *Dillon's* concept of duty as a function of foreseeability but did not determine foreseeability by relying on *Dillon* guidelines. The court specifically found the strict use of the guidelines inappropriate and determined they were to be regarded as only aids. Here too *Dillon* may be an aid but it is not controlling.

In light of applicable principles of law and *Molien,* I would hold ·Mrs. Wiggins states a cause of action as a direct victim. I conclude the risk of harm to her was reasonably foreseeable to defendants. It is easily predictable that negligent care of one's elderly and infirm spouse would produce emotional distress. This is particularly true in the context of this case. Wife herself is elderly and was unable to personally fulfill her spousal obligations of comfort and care. She thus entrusted her husband's care to defendants. Any negligent abuse of that responsibility would have a *direct* effect on her. Contrary to the implications of the majority opinion, the impact of the hospital's dereliction of duty does not diminish because she was absent at the time of the injury.[5] The alleged tortious conduct of defendant directly related to her. Her sufferings were foreseeable because of reasonable expectations personal to her.

---

[5]The majority's emphasis on the disruption of the marital relationship in *Molien* is also misplaced. *Molien's* holding is neither dependent on nor restricted to the disruption of the marital relationship.

## III

Many appellate courts since *Molien* have accepted, as a matter of law, that mental suffering may occur[6] without an accompanying physical injury but have been reluctant to define or interpret the "direct victim"[7] concept. The court in *Aldaco* v. *Tropic Ice Cream Co.* (1980) 110 Cal.App.3d 523 [168 Cal.Rptr. 59] determined *Molien* to apply prospectively and thus denied claims for injuries occurring before it was decided. In *Canavin* v. *Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512 [196 Cal.Rptr. 82], the court denied a family's claims for emotional distress resulting from the husband's death, finding the claims barred because they were not pleaded as an independent action and could not be recovered as damages for wrongful death. In *Hathaway* v. *Superior Court* (1980) 112 Cal.App.3d 728 [169 Cal.Rptr. 435], parents sued for their son's wrongful death after he was electrocuted on defendant's property. The court held *Dillon* precluded recovery because the parents were not present at the time of the incident and concluded, *without any discussion,* the parents were not direct victims within the meaning of *Molien.* In *Cooper* v. *Superior Court* (1984) 153 Cal.App.3d 1008 [200 Cal.Rptr. 746], the plaintiff alleged the defendants negligently allowed their tractor to roll away and damage plaintiff's property. The court declined "to extend the rationale of *Molien* to redress emotional distress resulting solely from negligent injury to property" (*id.,* at p. 1012), "absent a threshhold showing of some preexisting relationship or intentional tort." (*Ibid.*)

*Molien* has been, however, applied to facts somewhat similar to ours. In *Sesma* v. *Cueto* (1982) 129 Cal.App.3d 108 [181 Cal.Rptr. 12], a husband and wife brought actions for wrongful death and emotional distress based on the death of their newborn child. The parties alleged the doctor and hospital were negligent in monitoring the wife's progress in labor and did not give her the same attention as other maternity patients. The court found *Molien* controlling, and without discussing any facts describing the husband's whereabouts during labor or the cesarean section held husband stated

---

[6]For example, in *Delia S.* v. *Torres* (1982) 134 Cal.App.3d 471 [184 Cal.Rptr. 787], plaintiff husband sued defendant for *intentional* infliction of emotional distress as a result of the defendant's rape of plaintiff's wife. Citing *Huntly* v. *Zurich Gen. A. & L. Inc.* (1929) 100 Cal.App. 201 [280 P. 163] (mutilation of corpse), the court in *Delia S.* found an intentional personal wrong, distinguishing *Molien* as being based on negligence.

[7]"Within months after the *Molien* decision, California appellate courts began struggling to apply the 'standards and guidelines' of that case to the facts of their respective cases. Despite the supreme court's reminder in *Molien* to determine liability on a case-to-case basis, lower courts have already reverted to strict adherence to the *Dillon* standards." (Gallagher, *Molien* v. *Kaiser Foundation Hospitals: California's New Tort of Negligent Infliction of Serious Emotional Distress* (1982) 18 Cal. Western L.Rev. 101, 118, fns. omitted.)

a cause of action for emotional distress. "The *Molien* analysis has application in the present case, as the concept it introduces of a 'direct victim' of a negligent act inflicted upon another bolsters not only the holding that Mrs. Sesma should be able to go to trial on the issue of whether she suffered emotional distress from the effects of any negligence affecting her fetus or herself in this case but also supports the conclusion that Mr. Sesma, the father, may be able to show that he is a 'direct victim'—if not percipient witness—of negligent acts giving rise to infliction of serious emotional distress." (*Id.,* at p. 116.)[8]

In *Kately* v. *Wilkinson* (1983) 148 Cal.App.3d 576 [195 Cal.Rptr. 902], the court properly distinguished *Dillon* bystander injuries and "direct injuries, i.e., those in which the defendant's negligence is foreseeably directed toward the person asserting a claim for emotional distress." (*Id.,* at p. 587.) "Under the rationale of *Molien* we believe [the defendants] should reasonably have foreseen that Kately, as the purchaser and an operator of the defective boat, would suffer emotional distress when the boat malfunctioned and killed or injured another human being. Such distress is foreseeable regardless of the relationship between the plaintiff/operator of the boat and the victim. It is clearly predictable that the user of a defective product will feel guilt and responsibility for the injury or death of another notwithstanding that the actual cause was the malfunction of the product he was using. Such feelings of guilt and responsibility are foreseeably an integral part of resultant emotional distress and suffering caused by the product malfunction. This is not a type of emotional harm which people should be expected to absorb for their own good and that of society." (*Id.,* at pp. 587-588.)

And finally, we come to the Supreme Court's own interpretation of *Molien.* In *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695 [194 Cal.Rptr. 805, 669 P.2d 41], the court held when a therapist has a duty to warn a mother of a patient's threat of injury to her, it is foreseeable her young child may also suffer emotional trauma. The duty extends to both the mother and the child. "This court, too, has recognized that because a negligent misdiagnosis of a communicable disease may foreseeably cause injury to close members of the patient's family, the physician's duty extends to them. (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 923.) The possibility of injury to Darryl if Stephen carried out his threat to harm LaNita was no less foreseeable than the harm to the mother in *Dillon* v. *Legg* and

---

[8]*Sesma* v. *Cueto, supra,* 129 Cal.App.3d 108 does not attempt to distinguish *Cortez* v. *Macias* (1980) 110 Cal.App.3d 640 [167 Cal.Rptr. 905]. In *Cortez* the court, relying on *Dillon,* upheld the trial court's granting of defendant's motion for nonsuit against a plaintiff mother for negligent infliction of emotional distress resulting from the death of her newborn child. *Cortez'* reliance on *Dillon* is misplaced. As our plaintiff, Mrs. Cortez was a *direct* victim and not a bystander.

to the husband in *Molien*. We conclude, therefore, that in alleging his age and relationship to LaNita, and defendants' negligent failure to diagnose and/or warn LaNita of the danger posed by Stephen, Darryl has stated a cause of action." (*Id.*, at p. 707, fn. omitted.)

## IV

Contrary to the majority's assessment,[9] plaintiff could have amended her complaint under *Allen* v. *Jones* (1980) 104 Cal.App.3d 207 [163 Cal.Rptr. 445] and *Wynn* v. *Monterey Club, supra,* 111 Cal.App.3d 789. Plaintiff entered into a contract with defendant to provide care to her husband. She was to benefit from the care as much as the husband, if not more, and it is foreseeable the defendant's negligence would affect not only her husband but her as well. She did not have to sue in contract but can rely on the contractual relationship as the basis for the duty in a tort action. "It is well settled that the same act may constitute a breach of contract and a tort and the plaintiff may make an election to sue in tort. In such case, 'the contract as pleaded [has] nothing whatever to do with the liability other than to create a duty on the part of respondent herein, and the action is grounded not upon the contract, but upon the duty springing from the relation created by it.' [Citations.]" *Sprague* v. *Frank J. Sanders Lincoln Mercury, Inc.* (1981) 120 Cal.App.3d 412, 418 [174 Cal.Rptr. 608].)

In *Allen* v. *Jones, supra,* 104 Cal.App.3d 207, decided before *Molien,*[10] the court held "damages are recoverable for mental distress without physical injury for negligent mishandling of a corpse by a mortuary. Public policy requires that mortuaries adhere to a high standard of care in view of the psychological devastation likely to result from any mistake which upsets the expectations of the decedent's bereaved family. As mental distress is a highly foreseeable result of such conduct and in most cases the only form of damage likely to ensue, recovery for mental distress is a useful and

---

[9]A reading of the transcript indicates the judge at the law and motion hearing did not give plaintiff's counsel a meaningful opportunity to amend:

"The Court: Do you want to take it up on the record as it is now, or do you want to amend it? You're welcome to do either.

"[Plaintiff's Attorney]: I think I can get it in by letter [*sic*].

"The Court: If the facts aren't going to change—

"[Plaintiff's Attorney]: Because of the financial burden placed on the plaintiff, Your Honor—This is an old widow fighting a big insurance company.

"The Court: Sustained without leave to amend. Take it up."

[10]*Molien* removed the requirement of physical injury in all mental distress actions, a result suggested by Justice Gardner in his concurring opinion in *Allen* v. *Jones, supra,* 104 Cal.App.3d 207, 216.

necessary means to maintain the standards of the profession and is the only way in which the victims may be compensated for the wrongs they have suffered." (*Id.*, at p. 214.)

At the time of contract, neither party envisioned the husband would recover his health. Plaintiff did not contract for a cure or even for his convalescence. She was physically unable to provide for his care at home. Her reliance on the defendant's ability to provide that care gave her the peace of mind she sought, namely the knowledge her terminally ill loved one would receive quality care. The facility's breach of this contractual obligation disrupted her peace of mind causing emotional distress; this result was reasonably within the contemplation of the parties at the time of contract.[11]

Wife, just as husband in *Wynn* v. *Monterey Club, supra,* 111 Cal.App.3d 789, entered into the contract with defendant for her own benefit. And, as with the husband in *Wynn,* she should be allowed to state a cause of action for emotional distress.

## V

I thus conclude plaintiff stated a cause of action under *Molien,* or could have amended to state a cause of action under *Wynn.* As discussed above, the law holds each of us responsible for the results of his or her negligence. A duty exists for each of us to act reasonably and to be accountable for his or her actions. This is the rule; exemption from duty is the exception. As Justice Tobriner wrote in *Dillon* v. *Legg, supra,* 68 Cal.2d 728, "[t]he assertion that liability must . . . be denied because defendant bears no 'duty' to plaintiff 'begs the essential question—*whether plaintiff's interests are entitled to* legal protection against the defendant's conduct. . . . "[D]uty" is not sacrosanct in itself, but only an expression of . . . those consolidations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citations.]" (*Id.*, at p. 734, italics added.)

I do not suggest an extension of *Molien* or a deviation from *Dillon.* But I do maintain that here, as in *Molien,* there is no reason to prevent plaintiff

---

[11]The court in *Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844 [88 Cal.Rptr. 39] allowed emotional distress damages for negligent breach of a bailment contract. "[W]here a person contracts, upon a sufficient consideration, to do a particular thing, the failure to do which may result in physical suffering or illness on the part of the other contracting party, he is presumed to have contracted with reference to the payment of damages for such injury or illness in the event such damages accrue by reason of a breach of contract on his part. [Citations.]" (*Id.,* at p. 851.) Plaintiff was allowed to recover for mental anguish upon loss of her family rings "[s]ince that contract was one whose terms related to matters directly concerning the happiness and comfort of plaintiff, and were such as to move her affection and tender feelings, . . ." (*Id.,* at p. 852.)

from stating a cause of action. Actually, public policy, far from denigrating this hospital's duty, compels its recognition.

Nor is the genuineness of plaintiff's claim a cause for concern. *Molien* and the circumstances of this case provide the requisite degree of certainty the plaintiff suffered injury. Her injury directly results from defendant's negligence. The increasing percentage of elderly in this country and the decreasing phenomena of both the nuclear family and care at home makes the policy of deterring future negligence in care facilities abundantly clear. Between the defendant and the plaintiff, defendant is the one worthy of "moral blame." Insurance is available and certainly the cost and any resulting burden to society is outweighed by the benefits to be received in knowing our elderly and infirm are properly and humanely treated.

Long term health care facilities are "bound by [administrative] regulations to provide quality care to the patients." (*Lackner* v. *St. Joseph Convalescent Hospital, Inc.* (1980) 106 Cal.App.3d 542, 553 [165 Cal.Rptr. 198].) "The care and treatment [the patients] receive is not necessarily designed to secure their release from the facility. Indeed, in the case of nursing homes, these facilities are generally the last place of residence for the patient. [¶] . . . The inmates of such institutions are most often old, weak and helpless and are at the mercy of the facility." (*Id.*, at p. 556.)

The spouses of the elderly and infirm who fill the beds of our convalescent hospitals may not merit preferential concern, but they do warrant equal consideration. Physical frailty has limited their ability to care for their disabled spouses. " 'Though [the] special social and psychological needs of the elderly are perhaps less obvious than their physical needs, they are no less real.' " (Frakt, *An Appreciation of Justice Pashman* (1982) 14 Rutgers L.J., viii, x, citing *Taxpayers Ass'n of Weymouth Tp.* v. *Weymouth Tp.* (1976) 71 N.J. 249, 80 N.J. 6 [364 A.2d 1016, 83 A.L.R.3d 1051].) " 'The knowledge that loved ones are safe and whole is the deepest wellspring of emotional welfare. . . . No loss is greater than the loss of a loved one, and no tragedy is more wrenching than the helpless apprehension of the death or serious injury of one whose very existence is a precious treasure.' " (*Id.*, at p. xii, citing *Portee* v. *Jaffee* (1981) 84 N.J. 88 [417 A.2d 521].

The majority fails to recognize the plaintiff can state a cause of action. "In clinging to the duty imposed in the 'good old days,' they turn away from the basis and strength of our common law system." (*Rudnick* v. *Gold-*

*en West Broadcasters* (1984) 156 Cal.App.3d 793, 802 [202 Cal.Rptr. 900] (conc. opn. of Trotter, P. J.).)

I would reverse the trial court's judgment.

A petition for a rehearing was denied August 17, 1984, and appellant's petition for a hearing by the Supreme Court was denied September 26, 1984.