HULL *v.* SCRUGGS.

(In Banc. May 26, 1941. Suggestion of Error Overruled July 11, 1941.)

[2 So. (2d) 543. No. 34535.]

Alfred Stoner and W. H. Montjoy, both of Greenwood, for appellant.

**Richard Denman** and **Means Johnston,** both of Green-wood, for appellee.

70

**Griffith, J.**, delivered the opinion of the court.

On April 4, 1940, appellant killed a dog then on his premises, the dog being the property of appellee, as it was afterwards learned. In an action against appellant, the defendant in the trial court, the jury, on what amounted in practical effect to peremptory instructions for plaintiff, returned a verdict in favor of the plaintiff, and the defendant has appealed.

The ownership and the killing are admitted, and in defense appellant plead justification. Plaintiff resided in the City of Greenwood and defendant's home was about a mile away and near the outside of the city limits. About three weeks before the date aforementioned, according to the evidence introduced in behalf of defendant, the dog took up his abode on the premises around defendant's home, and made himself a nuisance by howling at night, chasing the turkeys and guineas owned by the defendant and by demeaning himself so as to frighten the children and their nurses. The evidence on plaintiff's part was to the effect that the dog was not absent from plaintiff's premises in such manner as to be constantly or continuously somewhere else, although it was admitted by plaintiff that the dog was absent at recurrent times and hours.

In this situation we lay aside as unnecessary, but not because unimportant, all the above mentioned complaints

as regards the conduct of the dog, and lay aside also the assertion that during all the three weeks the dog was constantly or continuously on the premises of the defendant, because as to complete continuity there is a dispute of fact; and we proceed to a determination of the controversy upon undisputed evidence of facts and circumstances which conclusively disclose that, throughout the period of three weeks aforesaid, the dog sucked all the eggs which were laid by the turkeys and guineas on defendant's premises and that his presence there was of sufficient frequency or continuity, both day and night, that none of the eggs were left until after the dog was killed.

It is a fact of common knowledge that when a dog has once acquired the habit of egg-sucking there is no available way by which he may be broken of it, and that there is no calculable limit to his appetite in the indulgence of the habitual propensity. And generally he has a sufficient degree of intelligence that he will commit the offense, and return to it upon every clear opportunity, in such a stealthy way that he can seldom be caught in the act itself.

When a dog of that character has for three weeks taken up his abode upon the premises of one not his owner, or else from time to time during the course of such a period and from day to day as well as often during the night, has returned to and entered upon the premises of one not his owner, and has destroyed and continued to destroy all the eggs of the fowls kept by the owner of the premises, what shall the victimized owner of the premises do? Nobody will contend that he shall be obliged to forego the privilege to own and keep fowls and to obtain and have the eggs which they lay; nor will it be contended that he is obliged to build extra high fences, so high as to keep out the trespassing dog, even if fences could be so built. The premises and its privileges belong to the owner thereof, not to the dog.

He must then, as the most that could be required of

him, take one or the other, and when necessary all, of the three following courses: (1) He must use reasonable efforts to drive the dog away and in such appropriate manner as will probably cause him to stay away; or (2) he must endeavor to catch the dog and confine him to be dealt with in a manner which we do not enter upon because not here before us; or (3) he must make reasonable efforts to ascertain and notify the owner of the dog, so that the latter may have opportunity to take the necessary precautions by which to stop the depredations. It is undisputed in this record that the owner of the premises resorted in a reasonably diligent manner and for a sufficient length of time to each and all of the three foregoing courses of action, but his reasonable efforts in that pursuit resulted, every one of them, in failure.

What else was there reasonably left but to kill the animal? There was nothing else; and we reject the contention, which seems to be the main ground taken by appellee, that admitting all that has been said, the dog could not lawfully be killed except while in the actual commission of the offense. This is a doctrine which applies in many if not most cases, but is not available under facts such as presented by this record. After such a period of habitual depredations as shown in this case, and having taken the alternative steps aforementioned, the owner of the premises is not required to wait and watch with a gun until he can catch the predatory dog in the very act. Such a dog would be far more watchful than would the watcher himself, and the depredation would not occur again until the watcher had given up his post and had gone about some other task, but it would then recur, and how soon would be a mere matter of opportunity.

Reversed and judgment here for appellant.