PIERCE, Justice,
for the Court:
¶ 1. One afternoon in Tunica County, Mississippi, A.A., a minor, was electrocuted while playing on the farmland of David and Sherry Melton. Riley Berry, who worked for the Meltons, had parked a cotton picker under an allegedly sagging power line, which was owned by Entergy Mississippi, Inc. Ultimately, A.A. climbed onto the cotton picker, touched the power line, and was electrocuted. Berry’s deposition provides that he and his sons were unaware that A.A. and the Meltons’ daughter were playing nearby. One of Berry’s sons saw a flash out of the corner of his eye, while the men were working on their vehicles. Berry stated that they immediately began running in the direction of the flash and discovered A.A. on top of the cotton picker. Berry’s son was able to move A.A. and hand her to Berry, who held A.A. until emergency medical responders arrived.
¶ 2. At the time of the accident, A.A.’s mother, Mary Bethanne Acey, was en route to Moon Lake, in Coahoma County, Mississippi, with her son and Charles Graves. A Tunica County 911 dispatcher called Graves to inform him of the accident. Graves immediately turned the car around to proceed to the Meltons’ home. Acey then spoke with the dispatcher, who explained the gravity of the situation to Acey and informed her that A.A. had been “shocked.” Acey arrived at the accident scene and saw her daughter in Berry’s arms. Acey’s affidavit explains that she observed smoke coming from her daughter’s skin, skin flaking and turning gray, fingers missing and bones exposed, and she could smell the odor of burning flesh.
¶ 3. Emergency medical responders arrived shortly after Acey’s arrival. A.A. suffered severe burns to both of her arms and her hip. A.A. subsequently was airlifted to Le Bonheur Children’s Hospital in Memphis, Tennessee, and was later transferred to Shriners Hospitals for Children in Cincinnati, Ohio, which specializes in treating burn patients.
¶ 4. Thereafter, Acey commenced legal action on behalf of A.A., and individually, against Entergy, David and Sherry Melton, Melton Farms, Mary Mac, Inc., and Norfleet Investments, LP (“Defendants”). Defendants settled all claims on behalf of A.A. Regarding Acey’s individual bystander claims for emotional distress, En-tergy moved for summary judgment and moved to strike the affidavits of Acey and Dr. William Hickerson. The trial court subsequently denied each motion. According to the trial court, based on the nature of A.A.’s injuries, this case “cries out for the expansion of’ the factors provided by the California Supreme Court in Dillon [v. Legg, 68 Cal.2d 728, 740-41, 69 CalRptr. 72, 81, 441 P.2d 912, 920 (Cal.1968)], adopted by this Court in Entex, Inc. v. McGuire, 414 So.2d 437, 444 (Miss.1982), Thereafter, Entergy was granted interlocutory appeal by this Court on the following issues:
I. Whether the trial court erred in denying Entergy’s Motion for Summary Judgment on Plaintiffs bystander claim for emotional distress.
*672 II. Whether the trial court erred in denying Entergy’s Motion to Strike the Affidavit of Dr. William Hickerson.
III. Whether the trial court erred in denying Entergy’s Motion to Strike the Affidavit of Mary Be-thanne Acey.
¶ 5. Because this Court finds that En-tergy’s motion for summary judgment should have been granted, we will discuss the merits of only Issue I.
STANDARD OF REVIEW
¶ 6. We review the denial of summary judgment de novo and consider all evidence before this Court. Moore ex rel. Moore v. Mem’l Hosp. of Gulfport, 825 So.2d 658, 663 (Miss.2002). The evidence is examined in the light most favorable to the nonmoving party. Id. The movant is entitled to judgment as a matter of law, having summary judgment entered in its favor, if there is no genuine issue of material fact. Id.
ANALYSIS
I. Whether the trial court erred in denying Entergy’s Motion for Summary Judgment on Plaintiff’s bystander claim for emotional distress.
¶ 7. As both parties point out, Ace/s bystander claim for emotional distress is subject to the test provided by this Court in Entex, where this Court adopted the test established by the California Supreme Court in Dillon. Entex, 414 So.2d at 444. Dillon is the seminal case which instituted the bystander theory of recovery, by allowing a plaintiff to recover for emotional distress after witnessing her child’s death, based on the theory that liability should turn not on the risk of physical injury to the plaintiff (the “impact doctrine”), but on foreseeability of emotional harm to the mother. Dillon, 69 Cal.Rptr. 72, 441 P.2d at 920.
¶ 8. Briefly, by way of background, courts originally were reluctant to allow any recovery for intangible harms such as fright or emotional distress resulting from negligent conduct. See Prosser and Keeton, The Law of Torts § 54, 360 (5th ed. 1984). Later, plaintiffs were allowed to recover for the emotional distress occasioned by the fear for their own safety, but only when accompanied by physical impact. Prosser and Keeton, supra § 54, 363-64. The “impact doctrine” later became regarded as inherently arbitrary because of the apparent discontinuity between the rule’s scope and underlying purpose. As one commentator observed, “a near miss may be as frightening as a direct hit.” Richard N. Pearson, Liability to Bystanders for Negligently Inflicted Emotional Harm-A Comment on the Nature of Arbitrary Rules, 34 U. Fla. L.Rev. 477, 488 (1982). The “impact doctrine” eventually was replaced by a rule allowing recovery for the emotional distress resulting from threats to the plaintiffs physical safety, regardless of physical impact, if the plaintiff was within the “zone of physical impact or danger.” Thing v. La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 832 (1989) (Kaufman, J., specially concurring).
¶ 9. In First National Bank v. Langley, 314 So.2d 324 (Miss.1975), this Court abandoned the “impact doctrine.” We held that “genuine cases of injury growing out of negligent acts of another — which are reasonably foreseeable as in other negligent cases — will not be dismissed simply because there was no trauma nor impact on the body of the injured claimant.” Id. at 339. Notably, Langley was not a bystander case. Rather, the plaintiff there was the person upon whom the negligent *673 conduct was inflicted. Id. at 325. Because Langley was not a bystander case, Langley made no mention of the “zone of danger” rule adopted by a majority of jurisdictions after they abandoned the “impact doctrine.”
¶ 10. Significantly, Dillon rejected the “zone of danger” rule, finding it “hopeless[ly] artificial ].” Dillon, 69 CaLRptr. 72, 441 P.2d at 915. In Dillon, the plaintiff’s daughter was struck and killed by an automobile. Id., 69 CaLRptr. 72, 441 P.2d at 914. The plaintiff witnessed the accident, but from a location where the plaintiff herself was not in physical danger. Id., 69 CaLRptr. 72, 441 P.2d at 915. The Dillon Court reasoned that the “zone of danger” concept inevitably collapses under similar reasons for rejecting the “impact rule,” because “the only reason for the requirement of presence in that zone lies in the fact that one within it will fear the danger of [i]mpact.” Id.
¶ 11. Finding Dillon persuasive, Entex set forth the following factors, taken verbatim from Dillon, that must be considered when determining whether a bystander may recover for emotional-distress damages:
(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.
Entex, 414 So.2d at 444 (citing Dillon, 69 CaLRptr. 72, 441 P.2d at 920). In Entex, this Court made no mention of the “zone of danger” rule. The Entex Court simply noted that Langley had abandoned the “impact doctrine” and found Dillon’s bystander rule persuasive.
¶ 12. Here, because Acey undisputably fails to meet the first two Dillon or Entex factors, she does not qualify for emotional-distress recovery under Mississippi bystander law. Inexplicably, the dissent finds these two factors neutral. They are not. And, as will be explained, not even under California’s bystander law would Acey’s bystander claim prevail under these two factors. Contrary to the dissent’s understanding, the Dillon factors — under present California law — are not merely guidelines that should be “take[n] into account” [1] in determining whether a plaintiff is a foreseeable victim of the defendant’s negligence; they indeed are matter-of-law prerequisites that a claimant must meet. See Thing v. La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 830 (1989); see also Bird v. Saenz, 28 Cal.4th 910, 123 CaLRptr .2d 465, 51 P.3d 324, 327 (2002) (noting that La Chusa made the Dillon factors mandatory requirements that bystander claims for emotional distress must satisfy to be accepted as valid) (emphasis added).
¶ 13. Further, there are numerous problems with the dissent’s rationale, which we will point out because, if it were to be applied in this state, Mississippi’s bystander law would no doubt result in infinite liability in almost every negligence action. See, e.g., Dillon, 69 Cal.Rptr. 72, 441 P.2d at 919 (“In order to limit the otherwise potential infinite liability which would follow every negligent act, the law *674 of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable.”).
¶ 14. The first problem with the dissent’s rationale is its sole focus on the fact that Acey witnessed her daughter’s injury, but not the accident itself. This goes squarely against both Dillon’s and En-tex ’s second foreseeability factor, which inquires whether the mental/emotional shock “resulted from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.” Entex, 414 So.2d at 444 (emphasis added). Every parent will witness the result(s) of his or her child’s accident, but Dillon and Entex limited the range of foreseeable plaintiffs to those who sensorily or contemporaneously observed the accident.
¶ 15. Here, the record evidence undis-putably shows that Acey did not witness the accident. Rather, Acey learned of the accident from her son, who learned of the accident from a 911 dispatcher. This circumstance raises numerous questions that the dissent fails to take into consideration. Because Acey was not present at the scene of the accident when the accident occurred, did anyone owe Acey a duty not to allow her onto the premises after she learned of the accident in order to prevent the mental/emotional distress Acey claims resulted from witnessing her daughter’s injuries? Likewise, did anyone owe Acey a duty not to inform her of the accident? Or did Acey owe a duty to herself not to go to her daughter?
¶ 16. These, of course, are inane questions from a common-sense standpoint. But they are very real inquiries that must be considered with regard to the degree of Entergy’s foreseeability — the cornerstone of a defendant’s duty and liability. Is this for the factfinder to resolve, or is it a legal question reserved for the court? Assuming the former, what type of evidence must be put before the factfinder to allow the factfinder to determine foreseeability?
¶ 17. In La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 819 (1989), the California Supreme Court examined these types of rhetorical, legal questions and acknowledged that subsequent interpretation of Dillon’s guidelines by California courts had produced arbitrary and conflicting results and “ever widening circles of liability.”[2] The La Chusa Court corrected course. In place of Dillon’s “nonexclusive” guidelines, the La Chusa Court made the Dillon factors mandatory requirements that bystander claims for emotional distress must satisfy to be accepted as valid. Specifically, La Chusa held “that a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress — a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.” In applying these requirements to the facts before it, the La Chusa Court held that, as a matter of law, the plaintiff/mother could not state a claim for negligent infliction of emotional distress. The plaintiff mother had been near *675 by when the defendant’s automobile struck and injured her child, but the mother had not seen and heard the accident. The mother, like Acey, became aware of the accident only when someone told her it had occurred, and the mother rushed to the scene and saw her child lying injured and unconscious on the road. The La Chusa Court found that, under these facts, the mother could not satisfy the requirement of having been present at the scene of the injury-producing event at the time it occurred and of having been aware that it was causing injury to the victim. The La Chusa Court reinforced its conclusion by disapproving the suggestion in prior California cases (proceeding on rationale similar to the dissent here) that a negligent actor is liable to all persons “who may have suffered emotional distress on viewing or learning about the injurious consequences of his conduct” rather than on viewing the injury-producing event itself. Id., 257 CalRptr. 865, 771 P.2d 814 at 830,
¶ 18. A California case noted by the La Chusa Court is Hathaway v. Superior Court, 112 Cal.App.3d 728, 169 Cal.Rptr. 435 (1980), which addressed a very similar type claim as the one here before us. In Hathaway, parents alleged a cause of action for negligent infliction of emotional distress for their son’s death. Hathaway, 112 Cal.App.3d at 730, 169 Cal.Rptr. 435. While parents were at their inlaws’ residence, their son was playing outside and was electrocuted by an evaporator cooler just installed outside the inlaws’ home. Id. Another child had come into the home and told the parents their son was hurt. Id. at 731, 169 Cal.Rptr. 435. The parents immediately went outside, saw their son lying in a puddle of water, and watched efforts to save the boy’s life. Id. The trial court denied the parents’ claim under Dillon’s forseeability standard, because when the parents arrived outside approximately one minute after the event, the event which had constituted the accident had ended. The Court of Appeal, Fifth District of California, affirmed the trial court’s dismissal because the evidence was uncontradicted that the plaintiffs did not sensorily perceive the injury-causing event, but saw only the results after the accident was over. Id. at 736,169 CalRptr. 435.
¶ 19. Here, as Entergy asserts, Mississippi law has been consistent regarding bystander recovery for emotional-distress damages. No case from either this Court or a federal court construes or guesses Mississippi substantive law and sustains a cause of action by a third-party plaintiff against an alleged tortfeasor on the theory of bystander recovery, where the plaintiff was not present at the time of the accident and learned of the accident only after its occurrence. See Miss. State Fed’n of Colored Women’s Club Housing for Elderly in Clinton, Inc. v. L.R., 62 So.3d 351, 359 (Miss.2010) (affirming trial court’s directed verdict against mother’s bystander claim for emotional distress because mother was not present on the premises of apartment complex where her eleven-year daughter was statutorily raped); Summers ex. rel. Dawson v. St. Andrew’s Episcopal Sck, 759 So.2d 1203, 1210 (Miss.2000) (holding that parents of young student molested by other students on school playground were not foreseeable plaintiffs for third-party, emotional-distress recovery because the parents were not located near the scene when the events occurred); see also Miles ex rel. Miles v. VT Halter Marine, Inc., 792 F.Supp.2d 919, 925-26 (E.D.La.2011) (summary judgment entered against father of worker killed in shipyard accident claiming mental distress because alleged distress suffered by father was not caused by contemporaneous observance of accident; even though father was working nearby and came upon scene shortly after accident when resuscitation efforts were underway, *676 father did not witness accident); Moore v. Kroger Co., 800 F.Supp. 429, 433 (N.D.Miss.1992) (denied emotional-distress claims of family members of victim of motor-vehicle accident when family members did not witness accident); Campbell v. Beverly Enters., 724 F.Supp. 439, 440 (S.D.Miss.1989) (denied emotional distress claim of family members of an allegedly mistreated nursing-home patient because family members did not observe the alleged mistreatment).
¶ 20. The dissent finds Entergy’s precept — and our acknowledgment of it — disingenuous because the federal courts made Erie[3] guesses as to prevailing Mississippi bystander law. The dissent, however, overlooks all the Mississippi case law that plainly rejects the dissent’s position and rationale.
¶ 21. The dissent next calls us out for spending the first seven pages of our analysis relying principally on California case-law to point out why the dissent is wrong instead of analyzing the case at hand. Here is why we did so. Prior to the dissent, our opinion began by thoroughly analyzing this case under the Dillon factors adopted by Entex (see supra and infra ). The dissent, however, realizing that the undisputed facts of this case do not ascribe to the plain language of the Dillon/Entex factors, responded by contending that we had misinterpreted Entex. According to the dissent, because the En-tex Court favorably quoted from Dillon, where the Dillon Court stated that courts should “take into account” the three Dillon factors when evaluating whether a bystander was a foreseeable plaintiff, we were wrong to treat these factors as prerequisites. And, according to the dissent, “a jury should decide whether the unique aspects of this burn injury should entitle Acey to relief.” In response, we posed a number of questions that we had hoped the dissent would take into consideration, as California ultimately was forced to do.[4] The dissent’s response: “I simply am not concerned with post-Dillon jurisprudence in California. My concern is [Mississippi’s] bystander liability jurisprudence, and [that] this Court never has said — until today — that the Dillon factors are ‘mandatory requirements.’ ”
¶ 22. We failed. Rather than offer any legal explanation (or-rather-reasoning) why or how someone who was neither at or near the scene of the accident when it occurred, nor experienced a sensory or contemporaneous observation of the accident, may constitute a foreseeable plaintiff for bystander recovery under the Entex standards, the dissent stresses that Entex instructs that the Dillon factors need only - be taken “into account.” The only conclusion this logic yields is that Entex provides no standard at all. We do not so interpret Entex.
¶ 23. Briefly, the following language from Entex is all the Entex Court relayed from Dillon:
The reasoning of the California Court in Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968) in setting out the following factors in this type of claim is persuasive:
In determining, ... whether defendant should reasonably foresee the injury to plaintiff, or, ... whether defendant owes plaintiff a duty of due care, the courts will take into account *677 such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. Dillon [68 Cal.2d at 740-41, 69 Cal.Rptr. at 80, 441 P.2d at 920].
Entex, 414 So.2d at 444 (emphasis added).
¶ 24. Again, the Entex Court provided no discussion whatever as to why it found Dillon persuasive, only that it did so under the facts of the case before it. The Entex Court found all three Dillon factors were affirmatively met (not neutral). Thus, the plaintiff, McGuire, had presented a valid claim for bystander recovery. McGuire was located between fifteen and twenty feet from his home when it exploded. En-tex, 414 So.2d at 439. McGuire’s wife was inside the home. Id. McGuire heard his wife’s screams and saw their home consumed in flames. Id. McGuire assisted his wife in escaping from the burning home right before a second explosion occurred. Id. After considering the Dillon factors, this Court affirmed a verdict in McGuire’s favor. Id. at 444.
¶25. In the case before us, Acey analogizes her situation to that in Entex and argues that her claims satisfy the Dillon factors. It is undisputed that Acey satisfies the third factor of Dillon, because Acey is A.A.’s mother, therefore, they are closely related. Entex, 414 So.2d at 444 (citing Dillon, 69 CaLRptr. 72, 441 P.2d at 920). But Acey fails under the first two factors.
¶ 26. Acey argues that factor one, whether plaintiff was located near the scene of the accident, is satisfied, because she arrived at the accident scene within minutes; her daughter was continuing to be injured as a result of the accident, since her body was still smoking and her skin was flaking, and A.A. was still located at the accident scene.[5] Entex, 414 So.2d at 444 (citing Dillon, 69 Cal.Rptr. 72, 441 P.2d at 920). Acey compares her subsequent presence at the accident scene to the situation in Entex by stating that Acey helped pull her daughter from the cotton picker, which is comparable to McGuire pulling his wife from a burning house. Entex, 414 So.2d at 439. However, unlike McGuire, Acey was not present during the negligent event, and witnessed only the result of Entergy’s alleged negligence. See, e.g., Hathaway, 169 Cal.Rptr. 435. The deposition testimony of Acey, Berry, *678 and Berry’s son states that Berry’s son moved A.A. from the top of the cotton picker and handed her to Berry, who held A.A. on the side-platform of the cotton picker until emergency responders arrived to remove A.A. from the machinery.
¶ 27. Regardless • of who removed A.A. from the cotton picker, it is undisputed that Acey was not present when A.A. grabbed the power line or when Berry and his son pulled A.A. down from the top of the cotton picker. Accordingly, we find that Acey does not meet the first factor of the Dillon or Entex test.
¶ 28. Next, Acey argues that factor two, whether plaintiff suffers from the sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence, is satisfied, because she was not informed of her child’s specific injuries before she arrived at the scene, and A.A.’s injuries were still developing when she arrived. Id. Acey goes on to compare this argument to the situation in Entex, because' McGuire, at the time of the explosion, had his back turned away from the home. En-tex, 414 So.2d at 439. Acey therefore argues that McGuire saw only the aftereffects, which is the same as Acey seeing the aftereffects when she arrived at the accident scene minutes later. However, as previously stated, Entex states that McGuire was present at the very moment the accident occurred and simultaneously heard his wife cry out. Id. at Undoubtedly, McGuire experienced a sensory and contemporaneous observation of the accident itself, not the aftereffects, as Acey contends.
¶ 29. Acey next calls attention to Campbell. In Campbell, the federal district court found that plaintiffs could not recover emotional-distress damages for injuries inflicted on their mother as a result of alleged mistreatment while she was living in a nursing home. Campbell, 724 F.Supp. at 440. The court opined that the Mississippi Supreme Court would not consider recovery without the occurrence of a “traumatic physical injury” or “threatened violent physical injury,” and therefore denied plaintiffs’ claim. Campbell, 724 F.Supp. at 442. In the case sub judice, Acey misconstrues the district court’s statement to mean that bystanders who do not witness the negligent act can recover if direct physical injury or threatened violent physical injury was witnessed. As pointed out by the federal district court in Moore, Campbell, in making an Erie determination, merely assumed without deciding that even if third-party plaintiffs could recover without witnessing the actual event, the Campbell plaintiffs could not recover from such a claim because they could not make out a case for actual physical injuries suffered by the patient as a result of defendants’ alleged negligence. Moore, 800 F.Supp. at 434 (construing Campbell, 724 F.Supp. at 441-442).
¶ 30. Further, this Court in Summers noted that Campbell did not expand the holding in Entex — nor could it. Summers, 759 So.2d at 1210. In Summers, parents brought an action against St. Andrew’s Episcopal School, alleging they had suffered emotional distress resulting from their daughter’s involvement in an incident while she was under the school’s supervision. Summers, 759 So.2d at 1206-10. This Court upheld the trial court’s grant of summary judgment, holding that the parents’ emotional distress did not equate to a contemporaneous observation because they were not located at or near the scene of the incident when the incident occurred. Summers, 759 So.2d at 1211. In its opinion, this Court pointed to the fact that the plaintiffs in Moore argued that the language in Campbell expanded the holding of Entex, thus recognizing recovery for *679 emotional distress even when the plaintiff was outside the area of “immediate sensory perception.” Summers, 759 So.2d at 1210 (citing Moore, 800 F.Supp. at 433). Summers agreed with Moore’s holding that “after-the-fact witnesses” cannot be included in the class of foreseeable plaintiffs. Summers, 759 So.2d at 1210 (citing Moore, 800 F.Supp. at 434).
¶ 31. Lastly, Acey argues that the facts of this case are similar to a California Court of Appeals case in which the Court chose not to bar the plaintiffs claims alleging emotional distress from arriving at his home after emergency responders had arrived to extinguish a fire at his residence and to rescue his family members who were still inside. Zuniga v. Housing Auth., 41 Cal.App.4th 82, 103, 48 Cal.Rptr.2d 353, 364 (Cal.Ct.App.1995), abrogated on other grounds by Zelig v. County of Los Angeles, 27 Cal.4th 1112, 1138, 119 Cal-Rptr.2d 709, 45 P.3d 1171 (Cal.2002). However, the California court specified that recovery was not barred because the accident was still occurring when plaintiff arrived at the scene. Id. At the time the plaintiff arrived, the fire was still blazing, and his family members were still trapped inside. Id. The court distinguished the situation from Fife v. Astenius, in which the court barred recovery for family members who heard a vehicle collision and subsequently climbed over a wall to find a family member inside one of the vehicles. Zuniga, 41 Cal.App.4th at 103, 48 Cal. Rptr.2d at 364 (citing Fife v. Astenius, 232 Cal.App.3d 1090, 1092-93, 284 Cal.Rptr. 16 (Cal.Ct.App.1991)). The court in Fife held that the family did not contemporaneously observe the accident. Id. Accordingly, we find the facts of the case before us are distinguishable from Zuniga because, as previously stated, Acey was not at the scene of the accident when it occurred.
¶32. Therefore, Acey does not satisfy factor two of the Dillon test because she did not experience a sensory or contemporaneous observation of the accident. Summers, 759 So.2d at 1211. Acey was an after-the-fact witness, thus, an unforeseeable plaintiff. Summers, 759 So.2d at 1210. The United States District Court for the Eastern District of Louisiana recently interpreted and applied Mississippi law regarding bystander claims. Miles ex rel. Miles v. VT Halter Marine Inc., 792 F.Supp.2d 919, 925-26 (E.D.La.2011). In Miles, a father and son were employed at the same shipyard but were, at the time, working on different parts of the barge, when the son fell and ultimately died. Miles, 792 F.Supp.2d at 926. Testimony revealed that the father was informed of the accident and then walked to the accident scene, which was a five-to-ten minute walk. Id. When the father arrived, “he witnessed the aftereffects of the accident, namely five or six others performing resuscitation efforts and attempting to aid his son by placing an oxygen mask around his neck and a stretcher under his body.” Id. The district court determined that Mississippi law would not allow the father to recover because he did not “actually witness the accident,” which resulted in his son’s injuries and later death. Id: Again, it is important to note that caselaw focuses on the individual’s observation of the accident rather than the observation of the resulting injury caused by the accident. See Summers, 759 So.2d at 1210 (Miss.2000); Moore, 800 F.Supp. at 434; Miles, 792 F.Supp.2d at 925-26; Fife, 232 Cal. App.3d at 1092-93, 284 Cal.Rptr. 16.
CONCLUSION
¶ 33. The Entex factors are mandatory requirements that bystander claims for emotional distress must satisfy to be accepted as valid under Mississippi law. Acey is barred from recovery because she *680 was not near or at the scene of the accident, nor did she experience a sensory or contemporaneous observation of the accident. Therefore, summary judgment should be entered in favor of Entergy, and the judgment of the Circuit Court of Tuni-ca County is reversed and remanded for proceedings consistent with this opinion.
¶ 34. REVERSED AND REMANDED.
WALLER, C.J., RANDOLPH, P.J., CHANDLER AND COLEMAN, JJ., CONCUR. COLEMAN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., CHANDLER AND PIERCE, JJ. LAMAR, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND KING, JJ.

. Entex incorporated language from Dillon with no discussion as to why it found the case persuasive. Entex, 414 So.2d at 444.

. The special concurrence in La Chusa noted that a majority of jurisdictions have rejected bystander liability in favor of the zone-of-danger rule, for the reason that “Dillon’s confident prediction that future courts would be able to fix just and sensible boundaries on bystander liability has been found to be wholly illusory- — both in theory and in practice.” La Chusa, 257 Cal.Rptr. 865, 771 P.2d at 833 (Kaufman, J., specially concurring).

. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

. Again, we point out that, even under Dillon or pre-La Chusa, Acey would not have been entitled to bystander recovery under California law, as the Hathaway case, supra, illustrates.

. For the sake of thoroughness, Acey contends that she arrived at the accident scene in seven minutes; however, this is based upon the usual travel time between where Acey was located when she learned of the accident and the accident scene. More than seven minutes would have elapsed between the time of the accident and the time Acey arrived at the scene. There is no indication in the record of the exact time A.A. was electrocuted, however, the record shows the following course of events: (1) the 911 call was placed at 10:45 a.m., reporting A.A.'s accident; (2) emergency responders were dispatched at 10:55 a.m.; (3) Acey received a phone call from the 911 dispatcher informing her of the accident at an unknown time after the accident was reported; (4) emergency responders arrived at the accident scene at 11:12 a.m.; (5) Acey's testimony states that she thinks that the emergency responders arrived within a few minutes of her arrival; (6) twenty-seven minutes elapsed between the time the 911 call was made and the time that emergency responders arrived on the scene.