# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00393-COA

**LEXI WILKERSON, A MINOR, BY AND THROUGH CHASITY REEL, MOTHER AND NEXT FRIEND**                                          APPELLANT

v.

**LARRY ALLRED**                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2023 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | WILLIAM P. FEATHERSTON JR. |
| ATTORNEY FOR APPELLEE: | MARK C. CARROLL |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 09/03/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Larry Allred shot and killed an eight-month-old puppy belonging to Lexi Wilkerson while the puppy was next to Lexi's younger sister Kaylee.[1]  Lexi and Kaylee filed a complaint against Allred in the Hinds County Circuit Court alleging both intentional infliction of emotional distress and negligent infliction of emotional distress.  Allred filed a motion for summary judgment claiming that because Lexi "did not witness" the shooting, she could not recover damages for the "wholly unforeseeable results of Allred's conduct."  The

---

     [1]  While the record contains an alternate spelling of the younger sister's name as "Caylee," we utilize the spelling as that of Lexi's brief.

circuit judge granted summary judgment in favor of Allred. Lexi appeals, arguing that the emotional distress she suffered was a reasonably foreseeable consequence of Allred killing her puppy and that her claims should have been presented to a jury. Upon review, we agree and reverse the circuit court's grant of summary judgment and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     Baebae, a mixed breed of Blue Heeler and Labrador Retriever, was a puppy that Lexi and Kaylee's mother purchased as a family dog with the intention to be trained as a service dog to assist Lexi, who suffered from serious "anxiety issues." Lexi's anxiety problems were serious enough that she had to be home-schooled and began attending counseling. The family was waiting for the puppy to turn "a year" old before beginning his training. Larry Allred was the family's neighbor and had visited the home to "give [them] treats to give Baebae" at least once.

¶3.     On February 27, 2019, twelve-year-old Kaylee was playing outside the family home with Baebae. At the time, Baebae was eight months old. Allred drove by the family's residence on a four-wheeler, and Baebae "ran alongside the vehicle." According to Allred, Baebae "chased and attacked [him] on his property." Lexi, however, asserts that Baebae was acting playfully and did not attack Allred. Kaylee began walking toward Allred's property to retrieve the puppy. When she was close, Baebae started walking toward her, at which point Allred "cock[ed]" a shotgun, causing the puppy to turn around. Allred pulled the trigger and shot Baebae in the head. Another neighbor, Mandi Smith, witnessed the shooting, and "because Kaylee fell as the shot was fired, she thought that Kaylee had been

2

shot."[2]

¶4.    Lexi was in the family's home when she "heard a loud bang[.]" "Three to five minutes" later, Kaylee ran inside "yelling and crying that Mr. Larry had shot [Baebae,] and she saw his brains."  Lexi ran outside and believed Baebae "was still alive because his legs and his tail were still moving."  But she then "saw Baebae take his last breath[.]"  Lexi asked Allred why he would kill her puppy, to which he responded with silence and "a half[-]smile and continued working in his yard."

¶5.    On June 18, 2019, Lexi and Kaylee (by and through their parents) filed a complaint against Allred in the Hinds County Circuit Court alleging intentional and/or negligent infliction of emotional distress.  On August 2, 2019, Allred filed an answer to the complaint admitting that he shot and killed Baebae but asserting that he acted in self-defense and, thus, should not be held liable.  Allred filed a motion to compel Lexi and Kaylee to answer his discovery requests on October 8, 2019.  On September 18, 2020, Lexi gave a detailed deposition regarding the shooting and her current mental-health status.[3]

---

[2]  This information was relayed in Lexi's under-oath responses to interrogatories. Whether that information would be competent evidence for this summary judgment ruling or inadmissible hearsay at trial was not raised in this appeal.  *See Henley, Lotterhos & Henley PLLC v. Bryant*, 361 So. 3d 621, 630 (¶29) (Miss. 2023) (stating "[h]earsay statements that would not be admissible at trial are incompetent to support or oppose summary judgment" (quoting *Mar-Jac Poultry MS LLC v. Love*, 283 So. 3d 34, 43 (¶22) (Miss. 2019))).

[3]  Kaylee reportedly also gave a deposition, but it is not included in the record; this appeal only concerns Lexi.  Kaylee's claims are still pending in the lower court.

¶6.     On July 1, 2022, Allred filed a motion for summary judgment[4] arguing that Lexi could not recover on either theory of emotional distress because she "did not witness the shooting," and under the bystander recovery theory, she could not be compensated. On July 19, 2022, Lexi filed a response to Allred's motion for summary judgment and asserted she was not seeking recovery under a bystander theory but rather for the "foreseeable results of [Allred]'s conduct in shooting and killing her dog and witnessing her dog die" as well as "suffering the loss of her dog[.]"

¶7.     On March 8, 2023, the circuit judge granted summary judgment in Allred's favor "as to claims filed against him by Plaintiff Lexi Wilkerson[.]" The order stated that Lexi could not recover under a bystander theory and, more importantly, could not recover because "there [wa]s no evidence that Defendant Allred directed any acts towards Plaintiff Wilkerson" nor was there a negligence argument because Allred "owed no duty to Plaintiff Wilkerson, and the alleged harm [wa]s not reasonably foreseeable" to Allred. The order was certified as a final judgment by the circuit judge on March 14, 2023. On April 5, 2023, Lexi appealed the grant of summary judgment.

**STANDARD OF REVIEW**

¶8.     "The standard of review for summary judgment motions is de novo." *Builders & Contractors Ass'n of Miss. v. Laser Line Constr. Co.*, 220 So. 3d 964, 965-66 (¶7) (Miss. 2017) (quoting *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 962 (¶12) (Miss. 2008)). Summary judgment should be granted "if the pleadings, depositions, answers to

_____

[4] Lexi's deposition transcript and her answers to his previous interrogatories were attached as exhibits.

interrogatories and admissions on file, together with the affidavits, if any, show that there is **no genuine issue as to any material fact** and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56 (emphasis added).

¶9.     Concerning motions for summary judgment, "[i]t is reversible error for a trial court to substitute its summary judgment for a jury's consideration of disputed factual issues if material to the case." *Downs v. Choo*, 656 So. 2d 84, 85-86 (Miss. 1995) (citing *Brown v. Credit Ctr. Inc.*, 444 So. 2d 358, 366 (Miss. 1983)). The Mississippi Supreme Court has declared with instructive effect that the trial court "cannot try issues of fact on a Rule 56 motion; it may only determine **whether there are issues to be tried**." *Mantachie Nat. Gas Dist. v. Miss. Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992) (emphasis added) (quoting *Sw. Drug Co. v. Howard Bros. Pharm. of Jackson Inc.*, 320 So. 2d 776, 779 (Miss. 1975)).

**ANALYSIS**

¶10.    Allred argues that Lexi's claim is one of a bystander and, thus, is subject to the bystander-claim criteria. As set out in *Entex*, the following elements are required for a bystander claim:

(1)     Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

(2)     Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

(3)     Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Entex Inc. v. McGuire*, 414 So. 2d 437, 444 (Miss. 1982) (citing *Dillon v. Legg*, 441 P.2d

5

912, 920 (Cal. 1968)). However, Lexi asserts that she is not seeking relief under a bystander recovery theory. Lexi claims that Baebae was her puppy, purchased to eventually act as a therapy dog for her, and Allred's actions were reasonably foreseeable to cause direct emotional and mental distress to her.

¶11. The dissent argues that the *Entex* bystander elements cannot be met in this case and that summary judgment should be affirmed. However, even if this opinion were decided solely on *Entex* elements—which it is not—those elements could provide an argument for Lexi to have a jury trial on her claims. The record shows no doubt that Lexi had a deep emotional connection to her puppy. Further, a jury could find that Lexi was "near" the incident. She heard the incident and arrived at the scene in time to watch the immediate effects of Allred's action to her puppy. Viewing the evidence in her favor, Lexi was a fifteen-year-old child with serious emotional anxiety issues for which the puppy was to be part of a solution. Lexi saw and received the silent half-smile (which fits the definition of a smirk) from Allred when she asked why he killed her puppy. Allred did not claim self-defense, did not apologize, and did not offer Lexi any help to care for her dying puppy. His reaction contributes to the revulsion and shock of the incident inflicted upon two children which a jury could reasonably find meets the elements of *Entex*.

¶12. At least three Mississippi Supreme Court cases shine a legal light on these factors. In *Hodges v. Causey*, 77 Miss. 353, 26 So. 945 (1900), a dog's owner sued the landowner who had killed the dog trespassing on his land to prevent the dog from "damaging" his cotton. *Id.* at 946. The landowner obtained a jury verdict and judgment in his favor, and the

6

dog's owner appealed. *Id.* On appeal, the supreme court recognized that the jury was given an instruction in error and, instead, should have been presented with "the reasonableness of the alleged necessity of killing the dog to save property . . . as a question of fact[.]" *Id.* The court explained:

> One is never justified in going to excessive lengths in the defense of himself or his property from assault or injury. The method of defense adopted must bear a certain relation to the character or seriousness of the threatened injury. The fact that a dog is trespassing does not justify his wanton or malicious destruction. . . . In any case, **the question whether the defendant was justified in killing or injuring the plaintiff's dog should be submitted to the jury, to be decided from a consideration of the peculiar facts and circumstances of the case.**

*Id.* (emphasis added) (citing *Hamby v. Samson*, 74 N.W. 918, 67 Am. St. Rep. 285, 294-95 (Iowa 1898)). The court went on to reason that "[w]hen it is borne in mind of what great value some dogs are, the reasonableness of the general rule against the right to kill a mere trespassing dog is apparent." *Id.* (citing *Mullaly v. People*, 86 N.Y. 365 (N.Y. 1881)). Accordingly, the judgment in favor of the landowner was reversed, and the case was remanded for a new trial. *Id.* at 947.

¶13. Later, in the case of *Hull v. Scruggs*, 191 Miss. 66, 2 So. 2d 543 (1941), our supreme court set out courses of action an owner of land must take before he can shoot a dog trespassing on his land. *Id.* In that case, a landowner killed a neighbor's dog after the dog continued to "suck" and "destroy all the eggs of the fowl[] kept by the owner of the premises." *Id.* at 543. The trespassing "was of sufficient frequency or continuity, both day and night" so that "none of the eggs were left until after the dog was killed." *Id.* The landowner who killed the dog was sued, and the trial court found in favor of the dog's owner.

7

*Id.* at 543. On appeal, the supreme court reversed, setting the following standard for the killing of a trespassing dog:

> He must then, as the most that could be required of him, take one or the other, and when necessary all, of the three following courses: (1) He must use reasonable efforts to drive the dog away and in such appropriate manner as will probably cause him to stay away; or (2) he must endeavor to catch the dog and confine him to be dealt with in a manner which we do not enter upon because not here before us; or (3) he must make reasonable efforts to ascertain and notify the owner of the dog, so that the latter may have opportunity to take the necessary precautions by which to stop the depredations.

*Id.* at 544.

¶14. As for the factor of the special relationship between the plaintiff and victim, the supreme court has recognized that "[d]ogs are a special breed, capable of arousing the strongest of emotions in mankind." *Wiley v. Keen,* 404 So. 2d 1025, 1026 (Miss. 1981). Here, viewing the evidence in favor of the nonmovant at the summary judgment phase, there is no doubt Lexi loved her puppy and had developed a special relationship with it, "arousing the strongest of emotions" in her. *Id.* Allred's actions at least created a circumstantial-evidence case—by shooting the puppy so close to Kaylee, by shooting a puppy who was walking away from him, by smiling at Lexi's anguish, and by working as if nothing had just happened, he created the impression that his acts were directed at the girls, not just at Baebae. A "circumstantial evidence case should rarely be taken from the jury. The same observation, albeit for a different reason, can be made in a case of shooting a dog." *Id.*

¶15. The supreme court was faced with close legal calls to determine whether a claim is one of bystander recovery in *O'Cain v. Harvey Freeman & Sons Inc. of Miss.*, 603 So. 2d 824 (Miss. 1991). O'Cain filed suit against her landlord following the rape of her roommate.

*Id.* at 825. The trial court entered summary judgment against her. *Id.* On appeal, she alleged she had suffered "extensive mental, psychological and emotional injuries of a permanent and enduring nature" due to her landlord's negligence in securing the premises. *Id.* Although "O'Cain did not actually witness the rape itself[,] . . . she was aware that her roommate was being assaulted in the adjacent room." *Id.* She "recognize[d] that her claim fail[ed] as one for a bystander but argue[d] she [wa]s not presenting a bystander claim." *Id.* at 830.

¶16.    O'Cain alleged instead that "as a result of the invasion of her apartment and [the] rape," she had incurred damages but made "no claim based on the actual witnessing of the event." *Id.* The court stated it was "[e]xtending to O'Cain the benefit of a reasonable doubt" and thus proceeded "on the notion that her claim [wa]s for something other than bystander recovery." *Id.* In that case, O'Cain was never raped and never actually witnessed the rape of her roommate, but O'Cain was close enough to the event to be traumatized by the event. *Id.* The supreme court reversed the summary judgment and remanded the case to proceed in the trial court. *Id.* at 831.

¶17.    As such, we extend Lexi that same benefit of the doubt and proceed "on the notion that her claim is for something other than bystander recovery." *Id.* Lexi contends that the tort of infliction of emotional distress, whether intentional or negligent, rests largely upon whether a defendant's conduct was reasonably foreseeable to cause emotional distress to a plaintiff. Indeed, "a plaintiff asserting a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a **reasonably foreseeable** result of the defendant's conduct." *Adams v. U.S. Homecrafters*

9

*Inc.*, 744 So. 2d 736, 743 (¶21) (Miss. 1999) (emphasis added).

¶18.    To prove a claim for intentional infliction of emotional distress, Lexi must show "the existence of a genuine issue of material fact" as to each of the following elements:

> (1) the defendant acted **willfully or wantonly towards the plaintiff** by committing certain described actions; (2) the **defendant's acts** are ones which **evoke outrage or revulsion in civilized society**; (3) the acts were directed at, **or intended to cause harm to, the plaintiff**; (4) the plaintiff suffered **severe emotional distress** as a direct result of the acts of the defendant; and (5) such resulting **emotional distress was foreseeable** from the intentional acts of the defendant.

*Goode v. Walmart Inc.*, 372 So. 3d 149, 163 (¶38) (Miss. Ct. App. 2023) (emphasis added) (quoting *Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 170-71 (¶41) (Miss. Ct. App. 2021)).  It is not for this Court to determine whether Allred's conduct meets these elements.  Instead, it is our duty to determine whether Lexi **put forth enough evidence to show** that such determination involves "**material factual questions in issue** over which reasonable jurors could disagree."  *Herrington v. Leaf River Forest Prod. Inc.*, 733 So. 2d 774, 776 (¶4) (Miss. 1999) (emphasis added) (citing *Russell v. Orr*, 700 So. 2d 619, 624 (Miss. 1997)).

¶19.    "Mississippi's standard for a claim of intentional infliction of emotional distress is very high and **focuses on the defendant's conduct** and not the plaintiff's emotional condition."  *Herbert v. Herbert*, 374 So. 3d 562, 571 (¶19) (Miss. Ct. App. 2023) (emphasis added) (citing *Pointer*, 327 So. 3d at 170-71 (¶41)).  Notably, "liability does not extend to mere insults, indignities, threats, annoyances, [or] petty oppressions[.]"  *Goode*, 372 So. 3d at 163 (¶38) (quoting *Raiola v. Chevron U.S.A. Inc.*, 872 So. 2d 79, 85 (¶23) (Miss. Ct. App.

10

2004)). Rather, the defendant's acts must be "**so outrageous** in character, and **so extreme** in degree, as to go beyond all possible bounds of decency, and to be regarded as **atrocious**, and **utterly intolerable** in a civilized community." *Brent v. Mathis*, 154 So. 3d 842, 851 (¶20) (Miss. 2014) (emphasis added) (quoting *Speed v. Scott*, 787 So. 2d 626, 630 (¶19) (Miss. 2001)).

¶20. In this case, there is no dispute that Allred shot and killed the puppy. The parties disagree, however, about the circumstances surrounding the shooting. Allred's lawyer argued at the summary judgment hearing that Baebae was "attacking" Allred. No sworn affidavit or deposition of Allred supports this fact, but for purposes of argument we can accept it as Allred's alleged version of the facts. Lexi's sworn testimony, on the other hand, paints a different picture:

> Kaylee said that Mr. Larry had asked her to come get the dog. And when she went to go retrieve Baebae, Baebae was - - Baebae turned to come towards her. And then he heard the sound of the gun cocking back, I guess. And he looked at Mr. Larry one more time and that's when Mr. Larry shot him.

Again, the record contains no sworn testimony or affidavit that contradicts Lexi's version of events.

¶21. "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Heigle v. Heigle*, 771 So. 2d 341, 345 (¶8) (Miss. 2000) (quoting *Miss. Dep't of Wildlife, Fisheries & Parks v. Miss. Wildlife Enforcement Officers' Ass'n Inc.*, 740 So. 2d 925, 929-30 (¶11) (Miss. 1999)). The circumstances surrounding Allred shooting the puppy are decidedly material in the case at bar. "The moving party has the burden of

11

demonstrating that there is no genuine issue of material fact, while the non-moving party should be given the benefit of every reasonable doubt." *Oaks v. Sellers*, 953 So. 2d 1077, 1080 (¶8) (Miss. 2007) (quoting *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss. 1990)).

¶22. Giving Lexi the benefit of the doubt, if Allred had not acted in self-defense, then her argument for intent certainly presents a genuine issue of a material fact. The puppy was walking away when Allred shot him. Lexi's sister, Kaylee, was so close to the puppy that when Allred shot him, she dropped to the ground. A passerby saw Kaylee fall down and thought **she** had been shot. Allred offered no explanation to Lexi when she arrived mere minutes after to see her puppy's exposed brains and watch him take his last breath. Allred simply gave a half-smile and went back to work. There is evidence Allred knew of Baebae's gentle disposition beforehand because he came to Lexi's house and gave treats to the puppy. Lexi was fifteen years old. Kaylee was twelve years old. Allred shot the puppy in the head for no reason other than it being a puppy, according to the record. It is certainly reasonable that a jury would find Allred's conduct so extreme as to evoke outrage or revulsion in a civilized society and was directed at Lexi and Kaylee, which foreseeably caused emotional distress.

¶23. A jury should have been given the opportunity to determine whether the shooting was "willful or wanton." *Brent*, 154 So. 3d at 851 (¶20) (quoting *Speed*, 787 So. 2d at 630 (¶19)). A jury should have been given the opportunity to evaluate whether Allred's conduct was "so outrageous . . . so extreme in degree . . . go[ing] beyond all bounds of decency . . . atrocious and utterly intolerable in a civilized community." *Id.* A jury should have been given the

opportunity to determine whether the shooting was "intended to harm" Lexi. *Id.* A jury should have been given the opportunity to determine whether the shooting caused Lexi "emotional distress." *Id.* And a jury should have been given the opportunity to determine whether "such resulting emotional distress was foreseeable" by Allred. *Id.*

¶24.     As for negligent infliction of emotional distress, a plaintiff is required "[(1)] to plead and prove some sort of injury or demonstrable harm, whether it be physical or mental, and [(2)] that harm must have been **reasonably foreseeable** to the defendant." *Goode*, 372 So. at 3d 164 (¶44) (emphasis added) (quoting *Orr v. Morgan*, 230 So. 3d 368, 377 (¶23) (Miss. Ct. App. 2017)). Lexi provided proof of the "demonstrable harm" the shooting had on her through her deposition, testifying that she sees a doctor and therapist at Hinds Behavioral Clinic "[a]t least once monthly."[5] She also provided contact information for her therapist and the clinic as part of her answers to Allred's interrogatories. Allred does not contest whether Lexi suffered from the event in his brief before this Court. Allred contends, however, that the damages Lexi suffered were not reasonably foreseeable.

¶25.     "[W]hen doubt exists whether there is a fact issue, the **non-moving party gets its benefit**." *Smith v. Minier*, 380 So. 3d 889, 892 (¶11) (Miss. 2024) (emphasis added) (quoting *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1275 (¶22) (Miss. 2007)).

¶26.     While attempting to prove a case for negligence, "a plaintiff is not required to prove that the exact injury sustained was foreseeable; rather, it is enough to show that the injuries and damages fall within a particular kind or class of injury or harm which **reasonably could**

---

[5] Lexi began attending the clinic shortly before the shooting occurred. Those visits eventually took place over the phone due to the COVID-19 pandemic.

**be expected to flow from the defendant's negligence**." *Id.* at 894. Further, "[t]he question of the foreseeability of a particular injury is one best left to the deliberation of a jury." *Id.* at 895 (citing *Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1143-44 (¶30) (Miss. 2004)). This state's precedent is clear—the question of whether Lexi's injuries incurred from the shooting of her puppy were reasonably foreseeable to Allred was a question for the jury.

## CONCLUSION

¶27. "The trial court is not the trier of fact at the summary judgment phase but only determines whether the information provided by the nonmoving party creates a genuine issue of material fact on an essential element." *Mantachie Nat. Gas Dist.*, 594 So. 2d at 1172. For the foregoing reasons, this Court finds a genuine dispute of material fact. Therefore, we reverse the circuit judge's order granting summary judgment and remand for further proceedings consistent with this opinion.

¶28. **REVERSED AND REMANDED.**

**BARNES, C.J., McCARTY AND SMITH, JJ., CONCUR. WILSON, P.J., AND McDONALD, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY EMFINGER, J.; McDONALD, J., JOINS IN PART.**

**CARLTON, P.J., DISSENTING:**

¶29. After reviewing the record and relevant caselaw, I find that Lexi cannot prove her claims for intentional infliction of emotional distress and negligent infliction of emotional distress. As a result, I would affirm the circuit court's grant of summary judgment. I therefore respectfully dissent from the majority's opinion.

14

¶30.    When reviewing a trial court's decision to grant a motion for summary judgment, the standard of review is de novo. *Herbert v. Herbert*, 374 So. 3d 562, 568 (¶8) (Miss. Ct. App. 2023). Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). We view the evidence in the light most favorable to the nonmoving party. *Maxwell v. Baptist Mem'l Hospital-DeSoto Inc.*, 15 So. 3d 427, 434 (¶16) (Miss. Ct. App. 2008).

¶31.    On appeal, Lexi argues that because she is not seeking recovery under a bystander theory, the circuit court erred by applying the wrong standard when granting Allred's motion for summary judgment. Lexi clarifies that she is seeking damages for intentional infliction of emotional distress and negligent infliction of emotional distress under the theory that Allred's actions were outrageous and revolting and reasonably foreseeable to cause direct emotional and mental distress to her. Lexi submits that the question of foreseeability is a factual question for the jury.

### I.    Intentional Infliction of Emotional Distress

¶32.    As acknowledged by the majority, Lexi must prove five elements to prevail on a claim for intentional infliction of emotional distress:

> (1) the defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones "which evoke outrage or revulsion in civilized society"; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff "suffered severe emotional distress as a direct result of the acts of the defendant"; and (5) "such resulting emotional distress was foreseeable from the intentional acts of the

15

defendant."

*Herbert*, 374 So. 3d at 570-71 (¶18) (quoting *Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 170-71 (¶16) (Miss. Ct. App. 2013)). Intentional infliction of emotional distress has a "very high" standard in Mississippi. *Id.*

¶33. After reviewing the record, I find that Lexi's intentional infliction of emotional distress claim fails because *there is no evidence that Allred's actions were directed at Lexi or intended to cause her harm*. The record reflects that Lexi testified she had no reason to believe Allred had previously acted violently toward her dog, Baebae. Nothing in the record points to any animosity between Allred and Lexi. In fact, Lexi testified that Allred once came over to bring treats to Baebae.

¶34. The record is clear that Baebae was trespassing on Allred's property at the time of the shooting, and neither party disputes this fact. Allred maintains that Baebae chased and attacked him, so he shot Baebae in self-defense. While this particular fact is disputed, assuming, arguendo, that Allred shot Baebae unprovoked, there is still nothing to prove that this action was directed toward Lexi. The record does not even suggest that Allred knew that Baebae belonged to Lexi (and not to Lexi's mom or Lexi's family, generally).

¶35. Because Lexi cannot prove each of the elements of intentional infliction of emotional distress, she cannot recover under this theory as a matter of law.

## II. Negligent Infliction of Emotional Distress

¶36. Unlike intentional infliction of emotional distress, there is no explicit set of elements a plaintiff must prove to recover under this cause of action. The Mississippi Supreme Court

has stated:

> Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally—or even unintentionally yet the results being reasonably foreseeable—Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury.

*Morrison v. Means*, 680 So. 2d 803, 806 (Miss. 1996) (quoting *Sears, Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981)). "It is undisputed that under Mississippi law, a plaintiff asserting a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct." *Adams v. U.S. Homecrafters Inc.*, 744 So. 2d 736, 743 (¶21) (Miss. 1999).

¶37.   When dealing with emotional-distress damages, the plaintiff is put into two categories for foreseeability purposes: participants and bystanders. *Est. of Miles v. Burcham*, 127 So. 3d 213, 217 (¶6) (Miss. 2013). Participants are those who are directly involved in the causal event, and we analyze their claim as any other damages claim. *Id.* at 217-18. Bystanders are those who observe or are otherwise affected by the causal event, and the foreseeability of their claims is determined by analyzing the *Entex* factors, *id.* at 218, which follow:

(1)    Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

(2)    Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

(3)    Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant

17

relationship.

*Entex Inc. v. McGuire*, 414 So. 2d 437, 444 (Miss. 1982) (citing *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968)). Our supreme court in *Entergy Mississippi Inc. v. Acey*, 153 So. 3d 670, 673 (¶12) (Miss. 2014), held that these factors are "matter-of-law prerequisites that a claimant must meet."

¶38. In *Acey*, the plaintiff, Acey, received a 911 call that her daughter had been in an electrical accident while over at a friend's property. *Id*. at 671 (¶2). Acey, who had been driving at the time, immediately turned around and drove to the property. *Id*. When Acey arrived, she found her daughter was severely injured. *Id*. The minor child was missing fingers, some of her bones were exposed, smoke was still rising from her skin, and the plaintiff could smell her daughter's burnt flesh. *Id*. Acey sued Entergy and others for claims on behalf of her daughter and for Acey's emotional distress damages, individually. *Id*. at (¶3). While the defendants settled all claims with the minor child, Entergy moved for summary judgment on Acey's individual claim for emotional distress. *Id*. at (¶4). The trial court denied Entergy's motion, stating that based on the minor child's injuries, this case "cries out for the expansion of" the *Entex* factors. *Id*.

¶39. On appeal, the supreme court reversed the trial court's denial of summary judgment and, instead, granted summary judgment in Entergy's favor. *Id*. at 679 (¶32). The supreme court went through a substantial analysis of the *Entex* factors, looking specifically at post-*Dillon* cases in California, and found that the factors are, as a matter of law, prerequisites for emotional-distress bystander claims. *Id*. at (¶12). Ultimately, the supreme

18

court found that Acey failed to show the first two *Entex* factors, and, therefore, "Acey was an after-the-fact witness, thus, an unforeseeable plaintiff." *Id*. at 679 (¶32).

¶40.    Here, as in *Acey*, it is clear that Lexi does not meet the first two *Entex* factors. Unlike her sister, Lexi was not near the incident but, rather, in the back of her home across the street from Allred's property. While she was close enough to hear the gunshot, she testified that she did not know what made the noise until three to five minutes later when her sister informed her of the shooting. It is not enough that Lexi was there for the aftermath of the accident. *Id*.; *see also Summers ex rel. Dawson v. St. Andrew's Episcopal Sch. Inc.*, 759 So. 2d 1203, 1210 (¶28) (Miss. 2000).

¶41.    Lexi argues that foreseeability is a question for the jury. However, the issue here is whether Lexi was a foreseeable plaintiff, and, therefore, whether Allred owed her a duty. "The existence of a duty is a question of law." *Moss Point School Dist. v. Stennis*, 132 So. 3d 1047, 1050 (¶11) (Miss. 2014). Because Lexi was an unforeseeable plaintiff at law, she cannot recover under the cause of action of negligent infliction of emotional distress.

## Conclusion

¶42.    Because I find that Lexi cannot succeed on her claims for intentional infliction of emotional distress and negligent infliction of emotional distress, I would affirm the trial court's grant of summary judgment in favor of Allred.

**EMFINGER, J., JOINS THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**

19